CASE 104—PETITION EQUITY—MAY 30.

# Ford, &c., v. Ford's Ex'r.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

A TESTATOR MAY PROVIDE BY HIS WILL FOR THE ERECTION OF A MONUMENT over the graves of himself and family. Such a devise is for a "humane purpose" within the meaning of the statute which declares that a devise for any "charitable or humane purpose" shall be valid.

WM. LINDSAY, J. C. GILBERT FOR APPELLANTS.

A devise of the testator's entire estate for the erection of a monument is unauthorized by law. Such a devise is not for a "charitable or humane purpose." (Gen. Stats., chap. 113, sec. 2; *Idem*, chap. 13, sec. 1; Bates v. Bates, 134 Mass., 116 (45 Am. Rep., 305); Jarman on Wills, Bigelow's 5th ed., vol. 1, p. 211; Hoare v. Osborne, L. R., 1 Eq., 585; Mellick v. Pres't Asylum, Jac., 180; Moore's Trustees v. Moore's Heirs, 4 Mon., 201; 5 Dana, 427; Price v. Maxwell, 4 Casey, 23; Roper on Legacies, vol. 2, 138; Duvan v. Motteux, 1 Ves., 320; Piper v. Moutton, 72 Me., 155; Richards v. Robson, 31 Beav., 244; Fisk v. Attorney-General, 4 L. R., Eq., 521; In re Williams, 5 L. R., Ch. Div., 733; In re Burkitt, 9 L. R., Ch. Div., 576.)

Ford, &c., v. Ford's Ex'r.

SAM HOUSTON, J. W. BROOMFIELD FOR APPELLEE.

1. If a testator be legally competent to make a will, and acts freely, his will can not be impeached because harsh, unreasonable, imprudent or unaccountable in its provisions. (Higgins v. Carlton, 28 Md., 118; Nicholas v. Kershner, 20 W. Va., 251.)

2. It is not against public policy for a testator to provide for the erection of a monument to the memory of himself or his family.

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

John S. Ford died childless on September 5, 1884, at the age of seventy-seven years, having made his will in the manner provided by our statute on June 9, 1884. On September 11th following, it was probated in the county court. His widow died May 6, 1888, and on January 4, 1889, an appeal was taken to the Common Pleas Court, where it was assailed by his brother and sister upon the two-fold ground of incapacity and undue influence. The case was there tried upon these issues alone, resulting in the will being sustained. As usual in such cases, there is testimony *pro et con;* but from a careful reading we are of the opinion that it is not only so far conflicting as under the rule applicable where it is so, the verdict can not be disturbed, but that it in fact preponderates in favor of it.

While the counsel for the appellants have suggested several reasons why the judgment should be reversed, yet but one appears to be urged with much confidence, and whether this supposition be correct or not, we think, after a careful inspection of the record, no other need be considered.

The first clause of the will provides for the payment of the testator's debts, his funeral expenses, and the costs of administration.

The second authorizes his executor to sell his land, his widow consenting thereto, and that his estate be invested in certain interest-paying bonds, the entire profits, after payment of necessary expenses such as taxes and costs, to be paid to her semi annually, and in case they should prove insufficient for her suitable support, then the deficiency to be supplied from the principal.

The third clause reads thus: "At the death of my said wife it is my will and desire that my entire estate, real and personal, be then sold and converted into money by my executor, who is hereby authorized and empowered to make such sale or sales and conversion, and with the money thus arising my said executor, after paying the funeral expenses of my said wife, is hereby directed to purchase and cause the erection of a monument of the best quality of marble or granite over the graves of my said wife and myself of such size as the money thus arising will be sufficient to pay for."

The remaining clause nominates an executor and revokes all former wills. About six thousand dollars of the estate remained unexpended at the death of the widow.

It is now urged for the first time that the third clause of the will is inoperative and void. If so, the estate remaining will go to the appellants, save so far as it may be necessary to pay the funeral expenses of the widow, and so far as the executor may be authorized by the general law to mark the last resting place of the testator by a tombstone.

The other side say in response that the question

can not be considered upon this appeal, because the issue below was will or no will; but even if it can be, that the provision is not void.

Our statute of wills provides: "Every person of sound mind, not being under twenty-one years of age, nor a married woman, may by will dispose of any estate, right, or interest in real or personal estate that he may be entitled to at his death, which would otherwise descend to his heirs or pass to his personal representative." (General Statutes, chapter 113, section 2.)

The right to make a will is altogether statutory, and it is said that the power thus given to *"dispose"* of property by will embraces only a disposition to another person or some charitable use recognized by law, and not for the testator's own glorification or benefit; and that our statute enumerating what devises shall be regarded as for charitable uses, and, therefore, valid, does not embrace this one.

It is a substantial re-enactment of the English statute of 43 Elizabeth, relating to charitable uses, and which was passed to prevent them from falling, like superstitious uses, within the prohibition of the mortmain acts. It seems now, however, to be conceded that courts of equity were in the habit, even prior to the time of its enactment, of upholding charitable uses if so defined as to admit of execution; and it was never construed as being confined in its operation alone to the trusts named in it; but was held to embrace not only those but others kindred to them in spirit. (1 Jarman on Wills, side page 192.)

This statute became a part of the common law as

adopted in our State, and the same construction given to it by the English courts should be given here, because it is reasonable and just. (Moore's Heirs v. Moore's Devisees, 4 Dana, 354.) In fact, it is required, because our statute, which, as already said, is virtually a re-enactment of it, after enumerating certain charitable uses for which devises are valid, says: "Or for any other charitable or humane purpose;" thus putting in statutory form the construction that has been given to the English statute, if indeed it does not go beyond it. (General Statutes, chapter 13, section 1.)

Charity, in its most general legal sense, has been said to be a general public use; but the definition given by the eminent counsel in the Girard will case has received judicial approval. It is: "Whatever is given for the love of God or for the love of our neighbor, in the catholic and universal sense, given from these motives and to these ends, free from the stain of every thing that is personal, private or selfish, is a gift for charitable uses."

Our statute, by declaring that a devise for any "charitable or *humane* purpose" shall be valid, has perhaps gone even beyond the limit fixed by these accepted definitions, although it is not necessary to make that inquiry in this case. This is not a testamentary provision setting aside a fund in perpetuity for a use not charitable, and, therefore, void. Objection can not be raised to it upon the score that it is a perpetuity, but it is a provision for a monument not only for the testator, but also for his wife. It provides, in other words, for a family monument. Jarman on Wills, volume 1, side page 193, says: "The

erection of a monument to perpetuate the memory of the donor is not a charitable purpose, nor is the repairing of a vault or tomb containing his remains; *contra*, it seems, if the vault is to be used for the interment of the donor's family."

It will be remembered the author has in mind the English statute, and if it embraces as a charitable use the repairing of a family vault, surely our statute upholds a devise to erect a family monument when it declares that one for any "*humane* purpose" shall be valid. Under our law the personal representative of a decedent may provide reasonably in the way of funeral expenses, including a tombstone to mark his last resting-place. This being so, it would be strange if the testator could not do it in his will. It seems to us he has the power. He can not devise his property to be burnt, or otherwise uselessly destroyed, because such a disposition of it is not only unnatural and unreasonable, but against public policy; but in providing for suitably marking his grave he makes provision for the adornment and beautifying of the burial places of the dead. If doing so, when it relates to himself alone, can not, in the proper sense of the term, be said to be a "humane purpose," it certainly is when the provision is for a monument not only at his own grave, but over that of his wife. It is then not purely personal, and we are unwilling to hold that he can not thus provide for what is often, and evidently was in this instance, a long-cherished purpose, when the right to do so is not only dictated by reason, but by every feeling of humanity.

Whether the provision be, under all the circum-

stances, a reasonable one may enter into the question of the capacity of the testator to make it. The real extent of it may require judicial construction, but that the power exists in a testator to provide for marking the final resting-place of himself and family we do not doubt. If there be any ground for controversy over this provision of the will, it is as to its proper construction; how far the testator intended it to reach; how much of his estate he, under all the circumstances, expected and intended should be consumed in the manner indicated; and not whether the provision is void upon the ground that a testator can not provide for a monument over the graves of himself and his family.

Judgment affirmed.