CASE 77—SEPARATE ACTIONS BY THE COMMONWEALTH AND BY THE CITY
   OF LOUISVILLE AGAINST THE YOUNG MEN'S CHRISTIAN ASSOCIATION
   TO RECOVER TAXES ON PROPERTY OWNED BY SAID ASSOCIATION.—
   Nov. 12.

# Commonwealth v. Young Men's Christian Association.

APPEAL FROM DAVIESS CIRCUIT COURT.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

FROM JUDGMENTS FOR DEFENDANTS IN EACH CASE PLAINTIFFS APPEAL.
   AFFIRMED.

TAXATION—EXEMPTION—PLACE USED FOR RELIGIOUS WORSHIP—INSTI-
   TUTION OF PURELY PUBLIC CHARITY.

Held:   1. A Young Men's Christian Association, organized to en-
      deavor to bring young men under moral and religious influences,
      and holding meetings every Sunday afternoon in a building owned
      by the association, where a service was had, hymns were sung,
      and the Scriptures were read and expounded, actually used its
      building for religious worship, within the meaning of Constitu-
      tion, section 170, exempting property so used from taxation.
2. A Young Men's Christian Association, organized to endeavor to
      bring young men under moral and religious influences, to aid
      them in selecting suitable boarding places and securing employ-
      ment, and by other means to surround them with Christian in-
      fluences, and actually engaging in such work, and also furnish-
      ing instruction, keeping open libraries, gymnasiums, lists of
      boarding houses, etc., and membership in which is nontransfer-
      able, giving no property right—the membership fee being merely
      nominal—is an institution of purely public charity, within Con-
      stitution, section 170, exempting property of such institutions
      from taxation.

H. L. STONE AND J. B. CLARK, ATTORNEYS FOR APPELLANTS.

The only question which the pleadings raise for the determina-
tion of the court is whether appellee's property, or either parcel

thereof, is exempt from taxation under the provisions of the Constitution, and the statute enacted in pursuance thereof.

The appellee's contention is that it is exempt from taxation on three separate and distinct grounds: (1) Because it is a place actually used for religious worship; (2) because it is an institution of education not used or employed for gain, &c., and (3) because it is an institution of purely public charity.

1. Is it exempt for religious uses? The language of the Constitution is:

"There shall be exempt from taxation . . . places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities and towns. . . ."

The language of the response pertinent is:

"Since the association has occupied its present building above mentioned, said services (religious) have been conducted usually in a large room known as the chapel on the second floor . . . but said services have lately been held, and during the summer months of the year will perhaps generally be held, in the room situated in the basement of said building, and occupying the whole of the northeast part of the building, and known as the "gymnasium."

I wish to draw the court's attention sharply to two points: (1) The response does not say that it was so used on the 15th day of September of the years mentioned in the statement. It does not claim that it had two rooms in use at the same time for religious purposes, and the 15th day of September fixes the liability of the room that was not in use; and (2) it does not show that the same room, for instance the gymnasium, is not concurrently used for other than religious purposes, and construing against the pleader we assume that other uses were made of the rooms in which religious devotions were conducted. We submit, therefore, that the response does not bring a single room within the exception.

Certainly no other room than that used for religious purposes would be exempt, for it is the use and not the ownership that determines.

It makes no difference whether business rooms or business houses are built on the same half-acre lot under different roofs, or under the same roof. Although the store rooms and gymnasium and school rooms belong to the defendant, and are even under the same roof as the room in which they hold religious services, yet when they have a different use they are liable for taxation. We think that the exception in the Constitution refers to churches only, certainly not to sewing machine stores,

Commonwealth v. Young Men's Christian Association.

dry goods stores, &c., which can not be said to be appurtenant to a house of religious worship. At most, the defendant would have to value the room in which the religious worship was conducted, and have that much of its property. exempted.

2. Is the appellee an institution of purely public charity?

We submit that the evidence shows (1) that the payroll of the officers and employes of appellee approximate $590 a month; (2) the total receipts of the institution for the year ending June 30, 1900, were $21,361.12; (3) the lockers in. the gymnasium are rented to the *members*, for which they pay extra $1 per year; (4) the towels are charged for extra also to the *members;* (5) none of the privileges of the gymnasium are open *gratuitously* to the public at large; (6) the privileges of the barber shop are open to the public and those who patronize it must *pay* for the service rendered.

From this statement of facts it is impossible to reach the conclusion that the appellee is an institution of *purely* or *wholly public charity.*

### AUTHORITIES CITED.

Trustees of Ky. Female Orphans' School v. City of Louisville, 100 Ky., 470; City of Newport v. Masonic Temple Assn., 21 R., 1785; Young Men's Protestant Temperance and Benevolent Assn. v. Fall River, 160 Mass., 409; Young Men's Christian Assn. v. Paterson, 61 N. J. L., 420; Auburn v. Young Men's Christian Assn., 86 Me., 244; Philadelphia v. Masonic Home of Philadelphia, 160 Pa., 572; Barbee v. City of Dallas, 64 S. W., 1018; Book Agents of the Methodist Episcopal Church v. Hinton, 21 S. W., 321; Bosworth, Sheriff, v. Chautauqua Assembly, 65 S. W., 602; Broadway Christian Church v. Commonwealth, Trustees of Broadway Christian Church v. Gross, 66 S. W., 32; Widows' and Orphans' Home of Odd Fellows of Kentucky v. Bosworth, Sheriff, 70 S. W., 280.

HELM & BRUCE, ATTORNEYS FOR APPELLEE.

### AUTHORITIES CITED.

1. The exemption from taxation of public property and the property of churches, schools and other institutions devoted exclusively to the public good is not the exception but the rule; and statutes to this effect ought to receive a fair and reasonable construction. Yale University v. New Haven, 71 Conn., 316, 42 Alt. Rep., 87, 92; State v. Collector of Jersey City, 24 N. J. L.,

108, 120; Association for Colored Orphans v. Mayor of N. Y., 104 N. Y., 581, 586, 12 N. E. R., 279, 281.

2. The Young Men's Christian Association is an "institution of purely public charity." Trustees of Ky. Female Orphan School v. City of Louisville, 100 Ky., 470; City of Louisville v. Board of Nazareth, &c., 100 Ky., 518; Gerke v. Purcell, 25 Ohio St., 240; Episcopal Academy v. Philadelphia, 150 Pa. St., 565; Philadelphia v. Women's Christian Association, 125 Pa. St., 579.

3. Contemporaneous construction. Clark's Run Turnpike Co. v. Com., 96 Ky., 525.

4. Authorities explained. City of Newport v. Masonic Temple Assn., 21 Ky. Law Rep., 1785; Odd Fellows v. Bosworth, 23 Ky. Law Rep., 1505; Com. v. Lexington Cemetery, 24 Ky. Law Rep., 924; Gray St. Infirmary v. City of Louisville, 23 Ky. Law Rep., 1274; Auburn v. Y. M. C. A., 86 Me., 244, 29 Atl. Rep., 992; State v. Patterson, 61 N. J. L., 420, 39 Atl. Rep., 655;

HAYES & WELLS, ATTORNEYS FOR APPELLEE.

## SYNOPSIS AND LIST OF AUTHORITIES.

1. The building of appellee is "a place actually used for religious worship." Const. of Ky., sec. 170; Opinion of Judge Sterling B. Toney in City of Louisville v. Y. M. C. A.

2. The appellee is in an important sense an institution of education. Bosworth, Sheriff, v. Ky. Chautauqua Assembly, 23 R., 1393.

3. Appellee is an institution of purely public charity.

(1) Definitions of purely public charities. Trustees of Ky. Female Orphan School v. City of Louisville, 100 Ky., 470; Am. & Eng. Ency. of Law, 2d ed., vol. 5, p. 894; Ibid., p. 897; Vidal v. Girard, 2 How. (U. S.), 127; Ford, &c., v. Ford's Ex'r, 91 Ky., 572.

(2) The facts of this case show clearly that appellee comes within the approved definitions of a purely public charity.

(3) The charges made by appellee do not deprive it of this character. Philadelphia v. Women's Christian Assn., 125 Pa. St., 572.

(4) Appellee's membership regulation does not destroy its character as a purely public charity. Donnahugh's Appeal, 86 Pa. St., 306.

(5) Appellee contrasted with mutual benefit associations. City of Newport v. Masonic Temple Assn., 21 R., 1785.

(6) The property of appellee does not belong to the so-called members, and would not go to them upon a dissolution of the

Commonwealth v. Young Men's Christian Association.

association, and the public has the right (which would be pro-
tected by the courts) to have the charity properly applied. Ky.
Stats., sec. 323; Ency. Pl. & Pr., vol. 22, pp. 204 and 205; Cham-
bers v. Baptist Educational Society, 1 B. Mon., 215; Bap. Church
v. Presbyterian Church, 18 B. Mon., 635; Fitterer v. Crawford,
50 L. R. A., 191.

(7) All of appellee's property is exempt. Trustees of Ky. Female
Orphan School v. City of Louisville, *supra;* Methodist Episco-
pal Church South v. Hinton (Tenn.), 19 L. R. A., 289.

(8) It would be competent to support by taxation such an
institution as the appellee.

(9) The cases following the leading case in Kentucky strength-
en our contention. City of Louisville v. Nazareth Literary and
Benevolent Institution and other cases heard with it, 100 Ky.,
518.

(10) In other States the Young Men's Christian Association is
regarded as a charitable institution. American Sunday-school
Union v. Taylor, 161 Pa., 307, 23 L. R. A., 695; Y. M. C. A.
of Omaha v. Douglass County, 60 Neb., 642, 52 L. R. A., 123;
City of Auburn v. Y. M. C. A., 29 Atl., 992; State v. Patterson,
39 Atl., 655, distinguished.

(11) The rule that exemptions from taxation are strictly con-
strued is not applicable to this case. Trustees Female Orphan
School v. City of Louisville, *supra;* 12 Am. & Eng. Ency. of
Law, 2d ed., 306; Yale University v. New Haven, 71 Conn., 316,
43 L. R. A., 490.

JNO. C. STROTHER, ATTORNEY FOR APPELLEE.

POINTS AND AUTHORITIES.

1. The preamble to the act incorporating appellee shows the
religious, moral and intellectual purposes and gives character to
the entire act of incorporation. Sutherland on Statutory Con-
struction, secs. 212-213-247.

2. Contemporary construction and official usage for a long
period by the persons charged with the administration of a law
are among the legitimate aids in the interpretation of statutes.
Sutherland on Statutory Construction, sec. 309. Cases criti-
cized and explained: City of Newport v. Masonic Temple Co.,
21 R., 1785; Morningstar v. Hazelip, 23 Ohio St., 144; Philadel-
phia v. Masonic Home, 160 Pa., 752; Delaware County Institute
v. Delaware County, 94 Pa.; Bangor v. Masonic Lodge, 73 Me.,
428; Babb v. Reed, 28 Am. Dec., 650; Young Men's Pro. Ben.
Soc. v. Fall River, 160 Mass., 409; State v. Patterson, 39 Atl.,
655; Auburn v. Y. M. C. A., 29 Atl., 992.

3. Appellee is an institution of purely public charity and is exempt as such an institution from taxation on all of its property.

4. It is an institution of education not used or employed for gain by any person or corporation.

5. Appellee's property and ground is a place actually used for religious worship and upon any and all of these grounds is exempt from taxation. Gerke v. Purcell, 25 Ohio St., 229, 120 Mass., 432; Episcopal Academy v. Philadelphia, 150 Pa. St., 565; Donohugh's Appeal, 86 Pa. St., 312; Boyd v. Fire Ins. Patrol, 120 Pa. St., 624; Philadelphia v. Women's Christion Assn., 125 Pa. St., 572; Bird Orphan Asylum v. School District, 90 Pa. St., 21; Methodist Episcopal Church South v. Hinton, 92 Tenn., 188; State v. Fisk University, 3 Pick., 333; Trustees Ky. Female Orphan School v. Louisville, 100 Ky., 470; Louisville v. Board of Nazareth, &c., 100 Ky., 518.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

These two appeals involve a common question, namely, the liability of the property of appellee to taxation. In each case the appellee owns a large and valuable building, used in part for other purposes than directly by the association. Rooms in the buildings are rented to raise revenue to help to maintain the institutions. A considerable part of the buildings are constantly used by the associations for their meetings and other work. In each case, also, the appellee owns a vacant lot and other property, pending its sale. The lots were taken in payment of donations to the institutions. Appellee's claim of non-liability to taxation depends upon the character of the institutions.

All property must share in bearing the burden of government, except such as by the Constitution is expressly exempt. Section 170 of that instrument is as follows: "There shall be exempt from taxation public property used for public purposes, places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities

or towns, and not exceeding two acres in the country; places of burial not held for private or corporate profit, institutions of purely public charity, and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education; public libraries, their endowments, and the income of such property as is used exclusively for their maintenance; all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto." Appellees claim to come within the classes of exempted objects above named, on three grounds: (1) That their buildings are places actually used for religious worship, and do not exceed one-half acre of ground; (2) that they are institutions of purely public charity; and (3) that they are institutions of education, not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education. The circuit courts of Daviess and Jefferson counties each sustained the claims of exemption.

The act of Legislature granting the charter to appellee, the Louisville Association, approved April 3, 1878 (2 Acts 1878, p. 280, c. 744) states the purposes of the association thus: "Whereas, certain persons have associated themselves together as a Young Men's Christian Association, for the promotion of religion, morality, and intellectual and social improvement; for the better promotion of these ends desire a charter of incorporation, therefore, be it enacted," etc.

The constitution adopted by the association, in which is set forth its purposes, declares:

"Section 1. It shall be the object of the association to seek

out young men and endeavor to bring them under moral and religious influences; to secure their attendance at some place of worship; to introduce them to the members and privileges of this association; to aid them in selecting suitable boarding places and employment, and by every possible means to surround them with Christian influences.

"Sec. 2. Members shall ·exert themselves to interest the churches to which they may belong in the object and welfare of the association, and use all proper means to increase its usefulness."

The objects and purposes of the Owensboro Association are substantially the same.

So much for the apparent nature of the association. Actually, on every Sunday afternoon there is held in their buildings a religious service for the worship of God. As a witness describes these, they are "much like preaching service, though not so formal." There are singing of hymns, reading of Scriptures, and expounding of the same, prayer, and generally an invitation and exhortation to lead a Christian life. In addition to these religious Sunday services, which may be said to correspond with the preaching services of the churches, there are regularly taught Bible classes in the association buildings, which classes correspond very nearly to the Sunday school work done by the churches. Other religious studies are also conducted. All of these services are strictly religious services, and are actually held in the association buildings. In addition to these, other work of a religious nature is done by the association outside of the building. Its religious work is its main work. Its secretary receives a salary. He is the only one of the association who receives any money compensation from it. His duties are quite similar to those of a pastor of a church.

There was nothing, perhaps, in all that moved the settlement of this country and the establishment of its forms of

government, more dominant than the religious idea.  From the earliest settlements, through every form of social compact, and by universal consent, ingrafted now either upon the Constitutions of the States or upon their statutes, is the idea that the public well-being justifies the most liberal encouragement of religious teachings and practices; and to that end, always, buildings used for religious worship have been exempted from taxation.  Religious societies are deemed to be public benefactors.  Their teachings and moral discipline among their members are probably of as much value to society, in keeping the peace and preserving the rights of property, as the most elaborate and expensive police system without such influences.  Hence they are regarded with favor.  No one church or sect is regarded by the law as above any other.  Nor does the manner of worship or the method of teaching or the creed affect this public policy.  It is therefore not material that the institution claiming the benefit of the constitutional exemption is without an ordained preacher, or that its methods involve a departure from the customary modes of worship.  If the worship is religious, commending itself to the consciences of its votaries, it is within the pale of the law's favor.  We have no hesitancy in declaring that appellees, in the use of their buildings as places actually used for religious worship, are exempted from taxation thereon, as being clearly within the letter and intent of section 170 of our Constitution.  But if the society owns other property, not actually used as a place for religious worship, or if it owns property so used, but in excess of the quantity exempted by that clause of the Constitution which has been quoted, or if some part of its buildings is used distinctly for other purposes, such excess would be liable to taxation as other property, without regard to its ownership, unless by some other provision of the Constitution it

was exempt, which brings us to consider appellees' claim that they are institutions of purely public charity.

Charity, in its broad sense, should abound in every institution; tempering even the rigor of the law, and meliorating the harsh conditions of life. It is announced by Divine authority and regarded by the common consent of all enlightened people as being the chief of human virtues. When property is employed in its unselfish exercise on behalf of the public, where it eases the burdens of society, and in a measure thereby discharges a duty which the public, on its conscience, owes to unfortunate humanity, and is unrestricted save by the limitation of ability, the charity may be said to be a purely public one. "Public charities are public blessings, and the Commonwealth is interested in giving force and effect to them," this court declared in Chambers v. Baptist Educational Society, 1 B. Mon., 215. Aside from that part of the religious work done by appellees, which may be denominated devotional, they undertake to bring within the religious, moral, and intellectual influences of the institution all young men, and, for that matter, old men, too, for the betterment, improvement, and protection from evil influences and consequences. It is not so much the giving of alms, or in aid of the mendicant. The endeavor is to reach the boys and young men before they need alms, and before they are reduced to beggary, and, by training the minds, and teaching them how to use and preserve their bodies, and how to live useful and honest lives, to save them from the lower grades of misfortune, so familiar in the utter helplessness of abject poverty and disease and want. This is accomplished by the institution's keeping open attractive quarters, where libraries of useful books, current magazines, and newspapers, innocent games of amusement, a gymnasium for the exercise and development of the body, and night schools, affording

additional opportunities to such as have not had sufficient advantages in education, are all accessible to whomsoever will avail himself of them, without regard to creed or nationality. Lists of decent boarding houses are kept, to which strangers are directed. Proper acquaintances and associations are formed, and useful and moral instruction imparted. In other words, they help the helpless, would keep the innocent innocent, and endeavor by placing clean ideals and experiences before the youth to have them adopt them in their lives. They aid the uneducated to a limited but practical education. This is all done "for the love of God and for the love of our neighbor, in the catholic and universal sense, free from the stain of anything that is personal, private, or selfish;" and it is, therefore, as said by this court in Ford v. Ford's Ex'r., 91 Ky., 576, 13 R., 183, 16 S. W., 451, a charity.

But it is argued that however benevolent the purposes and work of these institutions, they are limited to their own members, and consequently come under the head of private, instead of public, charities. The institutions have memberships, for which a nominal fee is exacted. Many, if not most, of their privileges, are restricted to their own members. But the members have no property right, or at most but a qualified and temporary one, in the buildings or funds of the associations. They receive no profits or dividends. Certificates of membership are not transferable, and have no money value. The relation of the members is similar to that of members of churches—a membership entailing a pecuniary obligation and probably an insignia of worthiness and good standing for the time being. The fund by which the lots were acquired and the buildings erected and furnished was, in the main, contributed by charitably disposed persons, who

have absolutely no pecuniary interest in or control of the institutions. They are donated for the perpetual enjoyment of all who shall avail themselves of the privileges. The part contributed by membership fees is by far the smaller part of the means necessary to maintain the association's work. Any man or youth of acceptable moral standing is eligible for membership. Many of the privileges of the institutions are, however, absolutely free to all the public. But the fact that some part of the expense in maintaining the institutions is required to be paid by those who enjoy all its privileges does not change its character as a public charity. It was held by this court in Trustees of Kentucky Female Orphan School v. City of Louisville, 100 Ky., 470, 19 R., 1916, 36 S. W., 921, 40 L. R. A., 119, that the fact that a small stipend was exacted from some of those who were benefited by the school did not detract from its character as an institution of purely public charity. That regulation merely made the charity partly self-sustaining. It was also held in that case, and the cases decided at the same time, that the fact that only a limited number of the public were benefited, on their selection by sectarian trustees, did not deprive it of its characteristics as a purely public charity. It is plain that the framers of the Constitution could not have meant that only those institutions should be included in their exemption which were freely open to all the public, for there are none such. Discipline, order, regulation, and selection are necessary in dispensing such charities; and requirements not unreasonable in these particulars, although they limit, as of necessity they must, the number to be benefited to the accommodation of the means at hand, are not at all incompatible with the general character of such institutions.

As the institutions are ones of purely public charity—which includes its educational features, not separately considered

for that reason—all their property is exempt from taxation. For, as said by the court·in the course of the opinion in. Trustees Kentucky Female Orphan School v. City of Louis- ville, supra: "Upon the whole, it would seem that when the statute exempts the 'institution' from taxation, and no quali- fying words are used showing or tending to show that only the property 'used' by the institution, or 'connected' with the institution, is to be exempt, then the associated entity—the corporate being—with its estate as an entirety, is embraced by the word 'institution.'" The cases of Newport v. Masonic Temple Association, 108 Ky., 333, 21 R., 1785, 56 S. W., 405, 49 L. R. A., 252, Widows' and Orphans' Home of the Odd Fellows of Kentucky v. Bosworth, Sheriff, 112 Ky., 200, 23 R., 1505, 65 S. W., 591, and Commonwealth v. Lexing- ton Cemetery Co., 114 Ky., 165, 24 R., 924, 70 S. W., 280, are cited by appellants as indicating a different construction from that here given section 170 of the Constitution. In addition to the fact that those cases do not purport to over- rule the comparatively recent and thoroughly considered case of Trustees of Kentucky Female Orphan School v. City of Louisville, supra, and were therefore not considered by the court as being in conflict therewith, there is this distinc- tion between them, on the one side, and the Orphan School case and these cases, on the other: The Masonic Temple case and the Odd Fellows Widows, and Orphans' Home case were each private charities, pure and simple, and so held by the court, because they were exclusively for the benefit of certain designated beneficiaries—those dependent upon the creators of the charities, or for the benefit of the persons claiming the exemption, as in the case of the Masons. They were held to have certain secret rites, ceremonies, and dis- tinctions, which might be deemed to have a peculiar value. At least, they were intended to, and did, exclude all the

public but themselves from their enjoyment. They owned their property, and used it exclusively for their own personal enjoyment and entertainment, as a social club or other similar association might. Their charitable contributions were more in the nature of a mutual insurance or protective arrangement by which they insured themselves, or the dependent members of their families, against want in certain contingencies. Their charitable work, if any, outside of that bestowed on themselves and their own families, was incidental only, and not the objective purpose of the institutions. The Cemetery Company case was decided upon the express language of the Constitution, which exempted only the places of burial or graveyards, and not investments devoted to the maintenance of burial places. Two cases from other courts denying the exemption to Young Men's Christian Associations have been cited by counsel for appellants, viz.: Auburn v. Y. M. C. A., 29 Atl., 992 (a Maine case); and the other (a New Jersey case) State v. Paterson, 39 Atl., 655. The first of these cases was made to turn upon the peculiar phraseology of the Maine statute (Laws 1889, p. 242, c. 274) to-wit: "Except that so much of the real estate of such corporations as is not occupied by them for their own purposes, shall be taxed in the municipality in which it is situated." All that part of the associations' buildings actually occupied by them was held to be exempt. The New Jersey case discusses only the "charitable feature" of the question. It held that the word "charity," in their statute (3 Gen. St., p. 3320), was not used in its broad sense, but, on the contrary, was solely in the sense of "aid to the needy." This construction of the word is not in harmony with that uniformly placed upon it by this court.

The judgments of the circuit courts are each affirmed.

Chief Justice Burnam dissents.