## Goode's Administrator et al. v. Goode et al.

(Decided March 24, 1931.)

W. B. MORROW for appellants.

W. O. HAYS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

J. C. Goode, a resident of Pulaski county, died testate in January, 1926, and his will was thereafter admitted to probate.

On the 30th day of April, 1930, Sallie Goode, Clara Goode Zearing, and Alvin C. Goode instituted an equitable action in the Pulaski circuit court in which they made the Farmers' National Bank administrator with the will annexed of J. C. Goode, the First Christian Church of Somerset, Ky., Everett Girdler, M. C. Williams, Edgar Murrell, and O. L. Conyears, as trustees and members of the official board of said church, parties defendant.

In the petition it was alleged that after the probation of the will, Silas G. Adams was appointed administrator with the will annexed, but that he thereafter died, and the Farmers' National Bank was duly appointed administrator of testator's will with the will annexed. The petition further alleged that J. C. Goode had never married; that his father and mother preceded him in death; that no brothers or sisters survived him except the plaintiff, Sallie Goode who was his only heir at law. The petition set out the will of J. C. Goode in full, and asserted that it was invalid for a number of assigned reasons which it is unnecessary to enumerate at this time; that, because of the invalidity of the will, the property of testator vested in Sallie Goode as his sole heir at law. The petition prayed that the will be held invalid and of no effect and that the property of J. C. Goode vest in Sallie Goode as though he had died intestate.

The defendants interposed a demurrer, and, without waiving that, filed answer and cross-petition, and asked that the will be declared valid and in full force and effect and that same be fully construed; that they be directed by the court as to what disposition should be made of the property, and they submitted nine questions which they asked that the chancellor should answer in regard to their rights, powers, and duties under the will. They made their answer a cross-petition against the plaintiffs.

By answer to the cross-petition, plaintiffs agreed that in the event the will should be held valid, the court might construe same and pass on all questions raised by the defendants. The case was submitted to the court on the demurrer to the petition, and it appears that the

parties agreed that the demurrer should go to and be considered as to items 10, 11, 12, 13, and 14 of the will. The court overruled the demurrer as to items 11, 12, 13, and 14, but sustained the demurrer as to item 10, and, the defendants refusing to further plead, the court adjudged the will to be valid with the exception of items 11, 12, 13, and 14, and adjudged those items to be invalid and of no force and effect and that they should be stricken from the will.

It was further adjudged that Sallie Goode, as the only surviving heir at law of J. C. Goode, was entitled to all the personal property left by the decedent except such as might be disposed of in items 1-9, inclusive, and directed that, after payment of the debts of the decedent and the costs incident to settling the estate, the administrator should turn over to her all money and property coming into his hands from the estate.

It was further adjudged that item 10 be carried out, and that Sallie Goode should receive the income from the property in Lexington, under the terms and conditions set out in the tenth item of the will. To the court's ruling as to items 11, 12, 13, and 14, the defendants excepted and prayed an appeal to this court, and to the rulings as to item 10, the plaintiffs excepted and prayed an appeal to this court.

The will in question covers nearly seven typewritten pages, and we shall give the substance of the will, except item 13, which we shall set out in full.

By items 1-4, inclusive, the testator directed the payment of his debts and the erection of a stone at his grave and made bequests of small sums of money and some of his personal effects to various parties. By the fifth and sixth items he gave all his household goods and effects to Sallie Goode if she survived him, but, in the event she did not survive him, directed that his household effects should go to her children to be divided among them as they might agree. In the seventh item he directed the sale of stock in any bank not located in Pulaski county; that the money derived from the sale be applied to the payment of his debts. In the eighth item he directed that his executor should sell no other property to pay his debts or funeral expenses, but should make arrangements until a sufficiency accumulated from rents, interest, or dividends to pay the debts. In the ninth item he

directed that, if it should become necessary to sell any real estate that he owned, the funds derived from the sale should be reinvested in real estate and also that any funds derived from the maturity of any paper or securities, should be reinvested in revenue earning property. By the tenth item of his will he directed that, if Sallie Goode should survive him, she should receive the rentals from his property at 219 South High street, Lexington, during her life, after payment of taxes, insurance, and upkeep. By the eleventh item he provided that, if Sallie Goode did not survive him or if she died after his death, the rentals from the Lexington property should go to her children, and that, after the death of Sallie Goode and her children, the rental from the Lexington property should come into estate and be disposed of as directed in item 13. In the twelfth item he stated that the above-named sums were all that he was bequeathing relatives, unless they came under the provision of item 13. By item 14 he provided that none of the principal of his estate should be used for educational and religious purposes but only the incomes therefrom. By items 15 and 16 he nominated an executor, and provided the manner in which the successor to the nominated executor should be appointed. Item 13 of the will is as follows:

"My estate must continue forever in honor of myself and relatives, and shall be known as the Goode estate. And revenues coming into my estate derived from rentals, dividends of interest after paying my debts as above directed, shall be used for educational and religious purposes forever, and as this will directs. But the principal or any part of it, must not be used, and only the incomes. And I request that the incomes, not above disposed of, shall first be used to help young people forever from the counties of Casey and Pulaski and McCreary, all of Kentucky to obtain an education. And one only at same time from each county and beginning with Casey County, and then on in the order named above. And young people from each county named above must have equal show, if suitable applicants are found. And the official Board of the Church where my membership is at the time of my death, which is now the First Christian Church of Somerset, Ky., shall be sole judges who is a suitable and proper

person to be a beneficiary of this will. And young people receiving this help shall receive two hundred dollars per school year, and they must be in school all the time this help is given to them. And before they can receive any help from my estate the young person so helped must first have obtained what is now a county high school education or its equal. And they must receive this help for a period of four years. And before the money is paid out for this purpose, the young person applying shall first execute a note for a year at a time to the official Board named for two hundred dollars for one year, and when one-half of this note is paid to the official Board above named, then the note shall be cancelled and the official board above named shall do with the money as it sees for the best. And this two hundred dollars per year to each young person so helped shall be paid in the way the official Board above named directs. My executor to obey the instructions of the official Board above named in paying this money to help young people obtain an education. And young people, one from each of the above named counties at the same time, may be helped only as the income above named is able to bear. And the notes above named for help given by this will shall be made as the above official Board shall direct in regard to time, etc. But requirements must not be made so a young person who has been helped by the provisions of this will should be overtaken by death or misfortune, then the notes he or she made to obtain this help must be filed away and no litigation follow. And all incomes coming into my estate from rentals or dividends, or interests, after complying with all the above conditions named in this will shall be given to the Church where my membership is at time of my death to do with as the Church pleases, and this sum whatever it may be shall be paid by my executor into said Church at least once a year.''

In a well-written opinion of the chancellor, found in the record, it is, in substance, said that item 13, when read and considered in connection with items 8 and 9 of the will, creates a perpetuity and comes within the provision of section 2360, Ky. Statutes, unless it is saved by section 317, Ky. Statutes, which is a virtual re-enact-

ment of Statute 43 Elizabeth. The opinion continues with an interesting discussion as to whether the trust attempted to be created comes within the permitted uses specifically designated in section 317, and concludes that it does not come within the purview of that section.

Counsel for appellees, in his brief, follows the same line of thought and argument as does the chancellor, and both assert that item 13 of the will is so vague, uncertain, and indefinite as to render it void; that testator's use of the words "in honor of myself and my relatives" indicates an intention on the part of the testator to perpetuate his own name and the name of his kindred for all times, and that this purpose manifested by the testator is in direct opposition to the definition of charity as given by eminent counsel in the Girard Will Case, and quoted with approval by this court in Ford v. Ford's Ex'rs, 91 Ky. 572, 16 S. W. 451, 452, 13 Ky. Law Rep. 183, and which is as follows: "Whatever is given for the love of God, or for the love of our neighbor, in the Catholic and universal sense,—given from these motives and to these ends, free from the stain of everything that is personal, private, or selfish,—is a gift for charitable uses."

It being conceded that a trust for any of the uses mentioned in section 317 of the Statutes is not forbidden by section 2360 of the Statutes, it only remains to be determined whether the trust created by item 13 of testator's will comes within the permitted uses, as set out in section 317 of the Statutes. In making this determination, the court is not bound by the strict letter of the statute, but may, following the universal rule, take into account other uses not specifically named, but which may come within the spirit, equity, and analogy of the statutes.

We are impressed with the clear and more comprehensive definition of charity as found in Jackson v. Phillips, 14 Allen (Mass.) 556, which reads:

"A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or con-

straint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.''

In determining whether the uses are charitable, equity will look to the purposes to which the trust fund is to be devoted and the ends that may be attained by proper administration of that fund rather than to the motive actuating the testator or donor. It may be that the testator had a lingering desire to perpetuate his name, and it cannot be said that the manner in which he chose this, was unworthy. He might have directed that an expensive monument be erected to his memory, as testator did in the case of Ford v. Ford, supra. He did not do this, however, but, on the other hand, he directed that his grave be marked with a simple stone, and that all his estate, after the payment of a portion of the rentals to certain relatives during their lives, should be devoted to the higher education of young people in the three counties named in his will and to the Christian Church of which he was a member, to be used by its trustees to carry on and foster the manifold purposes of the church. The uses for which the income from this trust fund is to be used are permitted by section 317 of the Statutes.

In the recent case of Owens v. Owens' Executor, 236 Ky. 118, 32 S. W. (2d) 731, the testator had, by will, created two trust funds, one to be known as the ''Educational Fund'' and the other as the Federal Monument Fund.'' The educational fund was to be used ''to educate many useful and patriotic citizens who will be an honor to the United States of America.'' The provision, in that case, as to the educational fund, is similar in many respects to the provision of the will under consideration. In that case, the young people receiving help from the educational fund were required to repay, unless prevented by some unavoidable calamity. In the Owens case, the court held that both of the uses mentioned in the testator's will were permitted uses under section 317 of the Statutes, and cited a long list of opinions of this court upholding the validity of gifts for the good of others.

It is urged that the trust is invalid because it is vague as to beneficiaries, so far as educational purposes are concerned. But it is pointed out by numerous authorities that uncertainty as to the beneficiaries is one of the distinct features or elements of a purely charitable purpose or use. In Perry on Trusts and Trustees, vol. 2, sec. 17, it is said: "In order that there may be a good trust for a charitable use, there must always be some public benefit open to an indefinite and vague number; that is, the person to be benefited must be vague, uncertain and indefinite, until they are selected or appointed to be the particular beneficiary of the trust for the time being." The testator directs that the income from the fund be used for the higher education of young people from the three counties, and leaves it to the discretion of the trustees to select worthy beneficiaries. Similar provisions have been upheld by this and other courts.

The argument that item 13 is void and cannot be administered because it is vague, indefinite, and uncertain overlooks the provision of section 318, Ky. Statutes, to the effect that "no charity shall be defeated for want of a trustee or other person in whom the title may vest; but courts of equity may uphold the same by appointing trustees, if there be none, or by taking control of the fund or property, and directing its management and settling who is the beneficiary thereof."

It also overlooks that fact that equity may be invoked for the guidance in the administration of a trust. In the case of Gass & Bonta v. Wilhite, etc., 2 Dana (32 Ky.) 170, 26 Am. Dec. 446, it is said:

"Where the objects of the charity, and the mode of its application, are pointed out, but not with sufficient distinctness or certainty to be specifically and accurately enforced, the court will, under its *cy pres* doctrine, give it effect, as near the general intent as may be and even where there is no specific mode or object pointed out, and in some cases where the object fails or ceases to exist, the court will, in respect of the general charitable purpose, devise a mode itself for giving it effect and employing the charitable funds; supply an original want of trustees, or, if necessary, displace old, and create new ones."

It is further urged that the trust is invalid because a part of the income will be paid to the trustees of the church to be expended by them in such a manner as they may see proper. It is first insisted that this is not a gift to the church but to the trustees, and, second, that it is not definite as to the objects for which it is to be expended. We do not think that this objection is seriously urged, as this fund does not go to the trustees as individuals but as trustees of and for the church, nor is it to be presumed that they will use this fund for the purposes other than to carry on and foster the proper activities of the church.

It is further pointed out that under section 319, Ky. Statutes, a church may not hold or acquire more than 50 acres of ground and that, inasmuch as the church is a beneficiary under this will, the property of the testator may be sold and reinvested, the church may eventually receive the income from more than 50 acres of land, and the trust would be invalid for that reason. It is not alleged that testator owned more than 50 acres of land at the time of his death. He only owned some city property, and we are not to assume that a reinvestment would be made in such a way as to violate existing laws.

Attorney for appellant insists that, if the will of the testator be upheld, a number of long questions propounded to the chancellor in the court below, as to how the trust shall be administered, be answered. It would be unwise to attempt a detailed answer to all these questions, but we think it sufficient to say, as we have hereinbefore indicated, that the chancellor may, on sufficient showing, direct the sale of property and the reinvestment of the proceeds in other income-producing property, and may direct the trustees in the administration of the fund and where doubt or uncertainty arises, and that the compensation of the trustees is primarily a matter for the consideration of the court in which the trustee makes settlements or reports.

For the reasons indicated, the judgment is reversed, with the directions to the lower court to enter judgment in conformity with this opinion.