## Shrader et al. v. Erickson's Executor, et al.

Nov. 15, 1940.

Churchill Humphrey, Judge.

450

Lloyd W. Gates and Davis W. Edwards for appellants.

M. Joseph Schmitt and Burke and Lawton for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellants, Mary Shrader, Edward Davis, Anna O'Malley Cook, Joseph and Clara O'Malley and Mary Marcelle, were plaintiffs below. The defendant at the outset was appellee, Allen Schmitt, executor; his co-appellee, Bishop John A. Floersh, of Louisville, Kentucky, described as a corporation sole, came into the litigation by intervening petition.

Mrs. Agnes Erickson died April 4, 1936, leaving a will bequeathing to Mary Shrader, a child of a sister, $100; to Edward Davis, a son of her half-brother, and his sister Mary Marcelle, $50 each; $50 each to three other children of her half-brother, the latter not parties

to the suit, as were not two grandchildren of her half-brother, devised $25 each. To other children of deceased sisters or brothers were given like sums; three of these joined in the suit, but others did not.

Testatrix provided for payment of her debts, meticulously setting out what should be expended for funeral and burial. She made specific bequests to numerous charitable institutions; to friends who had been kind to her, servants, and provided for the care of her and her husband's graves. Some of the charitable bequests were to protestant institutions; the majority, however, to those of Catholic faith. By clause 15 of the will she provided:

"(15) All the rest and residue of my estate, real, personal and mixed, and wheresoever situated, I give to the Catholic Diocese of Kentucky, at Louisville, Kentucky, for the education of young priests."

The executor was vested with power to sell any and all property of testatrix, in order to carry out the provisions of her will.

The above facts were set out in a petition filed by the six appellants, alleging that deceased left no bodily issue, naming her next of kin, and asserting that as such sole survivors they are entitled to take the residue as undevised property, in conformity with Section 1394, Kentucky Statutes. They allege that the attempted devise of the residue of the estate "is void as a lapsed devise, because it is incapable of taking effect, there being no such person, institution, association or corporation, as a Catholic Diocese in existence at, in or near Louisville, Kentucky, or elsewhere in Kentucky." They ask the court to construe clause 15 so as to entitle them to share in the residue.

Bishop Floersh was not made a party to the suit, but later tendered and was allowed to file intervening petition. By this pleading it was shown that he was a corporation sole, by succession, under an act of the legislature, approved April 18, 1888, under which act the corporation sole was given power to sue and be sued, contract and be contracted with; to receive bequests and devises under wills, and other corporate powers. Therefore, as he alleges, he, as corporation sole, is the residuary legatee under the will.

He then denied that clause 15 is void and of no effect, because of the grounds set out in the petition. In a second paragraph a history is recited, relating to Roman Catholic Bishops in the United States and Kentucky, showing appellee's right by succession, and that the described situation existed at the time of probate of the will, and now exists.

In 1888 the Catholic Diocese of Kentucky at Louisville was created a corporation sole, under the name of the Right Reverend George McCloskey, Roman Catholic Bishop of Louisville, and all property of the Diocese was transferred to the corporation sole. The act provided that at the death of Bishop McCloskey, or when he ceased to hold office, title to all property should vest in his lawful successor, and that each of said successors should be a corporation sole, by the name of "The Roman Catholic Bishop of Louisville," and that the successors should possess all powers and rights "herein conferred upon said corporation." Acts 1888, Book 3, Ch. 1123, p. 263.

It is then said that the corporation sole is engaged in Louisville, and in Kentucky, in owning and maintaining churches, schools, orphan asylums and other activities, including the education of young men for the priesthood in Kentucky, and that the intervenor at the time of the probate of the will had and now has sole charge of the activities mentioned, including the education of young priests in the Louisville Diocese, and hence he, as corporation sole, is the proper and only party to receive and administer the residuary legacy.

The intervenor filed special and general demurrers to the petition, motion to strike, and to require plaintiffs to bring in as plaintiffs or defendants, all the heirs-at-law. Later, plaintiff filed an amended petition, which cured some mistakes as to the relationship of various legatees, and asking that plaintiffs be permitted to prosecute the action as a class. This motion was sustained.

The chancellor, sweeping aside all dilatory pleas, in a written opinion said there was only one question presented, which he proceeded to discuss at length, finally directing judgment holding clause 15 of the will valid, and that Bishop Floersh had shown his right as corporation sole, to hold and administer the trust. Appar-

ently parties are here disregarding the chancellor's procedural rulings, since they only challenge the conclusions of the chancellor.

It may be said before entering into discussion, that plaintiffs below, in answer, denied the allegations of the intervening petition; some denials being made because of lack of knowledge or information, and affirmatively that there were in existence other organizations in Louisville which used the term "Catholic Diocese," governed in some instances by a Bishop, and some, though of the Protestant faith, educating young priests.

They also allege that some of the property left by testatrix, and attempted to be devised by clause 15, consisted of six houses and lots in Louisville, of the value of approximately $20,000. That such being the case, the bequest creating the alleged charitable trust was void as to the real estate, because of Kentucky Statutes, Section 319.

As may be observed from our statement, the issue was narrowed to two propositions: Is clause 15 sustainable under the sections of the statutes relating to creation of charitable trusts? And (2) if so, does not the trust yet fail, since there was a devise of real estate to a church or society of Christians, not coming within exceptions in Kentucky Statutes, Section 319? The question is further narrowed, as we read the briefs, since it was not seriously contended that the charity, if otherwise valid and workable, is not such as is contemplated by Kentucky Statutes, Section 317.

Counsel for appellant contends that the boundary lines around this gift or bequest are uncertain; that the purpose and intent of the testatrix is so uncertain that it is necessary (and contrary to law) to call on living persons to tell what was in the mind of testatrix; that she did not, with sufficient definiteness express in clause 15 her ideas of what she intended to do with her property.

The very statement to the effect that the gift or trust "has no certain limitations," meaning that clause 15 is uncertain, and as appellant undertakes to show, is ambiguous, calls for and allows aid in the ascertainment of the purpose of the maker. Carroll v. Cave Hill Cemetery, 172 Ky. 204, 189 S. W. 186; Bush's Ex'r v. Mackoy, 267 Ky. 614, 103 S. W. (2d) 95, and cases cited.

In the first case supra, it appears the question was at what point in the cemetery ground there should be erected a chapel which had been provided for in Mrs. Eastin's will. It would take too much time and space to discuss or attempt to distinguish the rules and principles as applied in the numerous cases cited in support of appellant's first contention. We have read most of them, and find that they lack application here.

In the first place we, as did the chancellor, find no difficulty in determining from the will two propositions: First, that as expressed by the will, testatrix evidenced a clear intention to bequeath to her relatives, friends, protestant and catholic charities, such sums as are specifically bequeathed, and no more. Second, it was definitely evidenced by clause 15 that it was her intention to bequeath the residue of property whatever kind and wheresoever situated, "to the Catholic Diocese of Kentucky for the education of young priests," providing that undevised property should go under clause 15.

Reading the entire will, and construing all its parts together, no one could doubt for a moment Mrs. Erickson's expressed intention, no matter what rule of construction be applied, or not applied. This being so, the courts are only put to the test of ascertaining if there is such a thing as an entity having power to hold and administer the trust. It is assuredly permissible to use such means as are reasonably consonant with rules of practice and procedure to determine if there is a legal trustee, with power, and cestui que trust who or which may be found to be entitled to the arising benefits.

In fact, the argument as to uncertainty advanced by appellant shows that the court may from circumstances, and existing situations, determine if there be legal trustee, and who is the cestui que. The argument is that since there are other denominations in Louisville, using words "Catholic Diocese," "Bishop," and who educate young priests, some of whom use the word "Catholic" in creed and prayer, it is impossible to ascertain from the language of the will, which of the several dioceses should be entitled to the use of the charity. Counsel cites Spalding v. St. Joseph's Industrial School, 107 Ky. 382, 54 S. W. 200, 21 Ky. Law Rep. 1107, where we had under consideration a clause of a will which we found to be a devise to charity generally "for charitable

objects * * * in this diocese of Louisville, according to his [the executor's] discretion." We found that there was no selected or mentioned class, and that the document was no more than "a power of attorney to make a will for the testator," and that this cannot be done in Kentucky. See also Gooding v. Watson's Trustee, 235 Ky. 562, 31 S. W. (2d) 919.

There was no lack of specification of a class here. Had the testatrix denominated certain "young priests" as beneficiaries, there may have been doubt as to the validity of the bequest. One of the essential features of a trust for charitable purposes is that the beneficiaries are uncertain, although they should be of a class described in general language. Kentucky Christian Missionary Society v. Moren, 267 Ky. 358, 102 S. W. (2d) 335, 336.

The chancellor found no difficulty in concluding that there existed a corporation, which to all intents and purposes was a Catholic Diocese in Kentucky. The act referred to above was sufficient basis for such conclusion. He no doubt took judicial cognizance of the act as he was authorized to do. Kentucky Statutes, Section 1624. Other facts were set out in the pleading which enabled and authorized him to find that the corporation sole not only was vested with the power to carry into furtherance the trust imposed, but that there existed a class entitled to the benefits of the bequest. It could hardly be conceived that proof might be brought forward throwing doubt upon this proposition.

But regardless of the pleadings, or their effect, we agree with the chancellor that a reading of the will as a whole clearly manifests that the charity was for the use and benefit of Catholics; young men who were to be educated as priests in the Catholic Church, as the words are generally used and usually accepted. When we read the will we find that there were three bequests to non-Catholic institutions for charitable purposes; some few bequests to friends, apparently non-Catholic, because of friendship or kindly ministrations. Each and every other bequest bears on its face the unmistakable evidences of testatrix' intention to bestow favors on those of the Roman Catholic faith, and to dedicate the bulk of her estate to advancement and dissemination of the Roman Catholic doctrines, religion or faith, and did not

evidence any purpose to further the doctrines of protestant denominations, though they might use the word "Catholic" in a universal sense, or the words "bishop" or "priests."

We held in the Moren case, infra, that the terms "Catholic" and "Christian" may "easily, according to the context, identify a *certain* great religious denomination having its origin in Kentucky." Citing Martin v. Kentucky Christian Conference, 255 Ky. 322, 73 S. W. (2d) 849. The above cited case standing alone, is sufficient authority to justify us in concluding that the chancellor correctly ruled. Particular attention is directed to Owens v. Owens' Ex'r, 236 Ky. 118, 32 S. W. (2d) 731, in which cases pro and con are noted, and which are conceived to be conclusive here on the main point.

There was little said by the chancellor in regard to the second contention of appellants; likewise the judgment is silent, though it may be taken that in holding the trust valid he intended to and did conclude, as we do, that the trust is not invalid because of the provision of Kentucky Statutes, Section 319, which provides that no church or society of Christians shall be capable of taking or holding title to exceeding 50 acres of ground, but may hold that quantity for purposes named in that section of the Statutes.

It is admitted that Mrs. Erickson at the time of her death owned five or six city lots. It is not shown or claimed that any one or more, or all of them combined, constitute more than or as much as 50 acres; we take it they are as described, ordinary city lots. We note in the closing part of her will testatrix vested her executors with full "power to sell and convey any real estate or personal property which may belong to my estate at the time of my death, in order to carry out the above disposition of my estate." This meant a power to sell her property for the purpose of paying the numerous personal and other bequests, and likewise to sell for the intended purposes of the trust. The property could be held by the corporation sole, and sold for the purpose of raising funds for only one purpose; the educating of young priests. If the trust be otherwise valid, it could be held for advantageous sale. Chambers v. Higgins' Ex'r, 49 S. W. 436, 20 Ky. Law Rep. 1425. In Street v. Cave Hill Investment Co., 191 Ky. 422, 230

S. W. 536, we held that a bequest of income from land given for the support of a church was invalid, but that the proceeds of a sale of the land to be made at the end of 99 years was valid. We had a similar question involved in Kentucky Christian Miss. Soc. v. Moren, 267 Ky. 358, 102 S. W. (2d) 335, 337, and in briefly discussing it we said:

> "We do not regard the devise of land to the trustee for the benefit of the several churches as offending the statute prohibiting churches from owning more than fifty acres of land. Section 319, Kentucky Statutes. It is not within the spirit or the letter of that statute. No title vests in any one church nor is the trust for the benefit of any one church. Indeed, it is not made to appear that title to more than fifty acres of land will ultimately vest in the trustee." See Goode's Adm'r v. Goode, 238 Ky. 620, 621, 38 S. W. (2d) 691.

In Spradlin v. Wiman, 272 Ky. 724, 114 S. W. (2d) 1111, we held invalid the trust portion of the Lucas will which provided: "After paying what I have named in this will I give the rest to the First Christian Church at Mayfield, Ky., what is left." It developed that the church took over a large body of land which it conveyed to Wiman for $8,000. Heirs challenged the conveyance on the ground that Wiman had no title, applying the provision of Kentucky Statutes, Section 319. In so deciding we said:

> "The testator did not give the property to the church in trust for a particular charitable purpose. If he had, the devise would have been valid. Kinney v. Kinney's Ex'r, 86 Ky. 610, 6 S. W. 593, 9 Ky. Law Rep. 753. He did not direct that his land be sold and the proceeds, or the balance of the proceeds after the payment of debts and other bequests, or devises, be given to the church. Had he done so, the devise would have been valid. Chambers v. Higgins' Ex'r, 49 S. W. 436, 20 Ky. Law Rep. 1425."

When we read the cases cited in the Spradlin case, we find that the prohibitive statute, supra, was held not applicable in those cases, since the devise or bequest was not for the use of the church; but was to go to the church to be applied to a specific charitable

458

purpose. Our conclusion obviates the necessity of passing on the vigorously argued motion to dismiss the appeal.

Judgment affirmed.