## Harris, et al. v. New, et al.

(Decided December 9, 1915.)

### Appeal from Jefferson Circuit Court (Chancery No. 2).

1. Wills—Devise of Personal Property to Wife—Power to Sell and Convey Title.—Where a testator devises personal property to his wife, but in a subsequent clause provides that if she should marry again, she should have only one-half of the property and designates devisees for the other half, and his widow was made the administratrix of his will, held that his widow could sell and transfer to a purchaser a perfect title to all of the personal property.

2. Equity—Jurisdiction—Multiplicity of Suits.—When the court has before it jurisdiction of the subject matter and all of the parties interested therein are before the court, it will do complete justice between the parties under the doctrine that equity abhors both circuity and multiplicity of actions and will adjust conflicting equities of persons in the one suit.

3. Trusts—Appointment of Trustee by Chancellor—Bond.—Where one who has but a defeasible title to personal property is about to remove himself and property from the State of Kentucky and out of the jurisdiction of its courts, the chancellor, upon proper application, will require such party to execute bond, properly conditioned, and, upon his refusal to do so, will appoint a trustee therefor with executed bond.

A. E. WILSON and DUFFIN, SAPINSKY & DUFFIN for appellant and appellee, Mrs. Lillian Harris.

M. A. SACHS, D. A. SACHS and J. G. SACHS for appellee and appellant, Charles New.

SAMUEL S. BLITZ for Bertha Harris, et al.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

On April 26, 1899, Isaac H. Harris, who was then a resident of Jefferson county, Kentucky, made and exe-

cuted his last will and testament, the first and second clauses of which are as follows:

"1st. After payment of any just debts and funeral expenses, I give my beloved wife, C. Lillian Jones Harris, all the rest and residue of my estate of every character and description, this including all insurance policies I may have. (One Mutual Benefit of Newark, N. J., for $3,000.00, and one in Northwestern of Milwaukee, Wis., for $5,000.00.)

"2nd. However, should she, my beloved wife, marry again, she is to receive only one-half of my estate and the remaining half shall pass to my mother, brothers and sisters in equal shares."

By the third clause he made disposition of his property in the event that he should survive his wife, and by the fourth clause he appointed her executrix of his will, and requested that she be permitted to qualify and act as such without being required to execute bond.

Some time in the early part of the year 1900, the exact date not being disclosed by the record, the testator died, still a resident of Jefferson county, and on the 12th day of January, 1900, his will was offered for probate before the county court of that county and an order was entered duly probating same, and his widow, the appellant, Lillian J. Harris, was permitted to qualify as his executrix and to take charge of his estate without the executing of a bond, as requested by him in the fourth clause thereof. So far as the record shows, the estate consisted of two life insurance policies upon the life of the decedent, aggregating $8,000, and twenty shares of the par value of one thousand dollars each in a commercial corporation, doing business in the city of Louisville, known as the Ox Breeches Manufacturing Company.

The two policies of insurance were collected by the executrix, and she assumed control over the entire twenty shares of the capital stock of the corporation mentioned. On May 31, 1902, she made her first settlement as such executrix, and she was charged therein with $28,000, being the amount of the insurance and the par value of the stock, and was credited by disbursements, for which she filed vouchers, to the amount of $8,855.61. She subsequently paid for, and on behalf of the estate, claims to the amount of $910.00, and on the 14th day of May, 1904, she made a second settlement with the county court, by which she was charged with the balance in her hands and

credited by these additional disbursements, and in the order confirming this report, she was adjudged to be finally discharged from all liability under the trust.

Some few years after the second settlement, the executrix sold and transferred to a man by the name of Summers, five shares of the capital stock in the Ox Breeches Manufacturing Company, which left in her hands only fifteen shares of the par value stated. All of the capital stock in the corporation mentioned had been previously transferred to herself individually by herself as executrix.

On the 23rd day of January, 1912, she entered into a contract with the appellant, Charles New, to sell to him the fifteen shares of the capital stock in the Ox Breeches Manufacturing Company for the sum of $29,982.73, but New refused to comply with that contract, and Mrs. Harris brought suit against him in the Jefferson Circuit Court to recover the purchase price, except $1,000, which he had paid. This suit was compromised on November 11, 1913, by New agreeing to pay $27,000 for said stock and to secure the deferred payments by the pledge of it as collateral security. Before this compromise agreement could be carried out, New claims to have discovered the terms of the will, and questioning the right of the appellant, Mrs. Lillian J. Harris, to convey to him the stock, another agreement was entered into between Mrs. Harris and himself of date of December 3, 1913, to the effect that appropriate proceedings might be instituted for the purpose of determining Mrs. Harris' power to sell the stock to him, and this suit was accordingly brought on March 5, 1914, by the appellant, Lillian J. Harris, against Charles New, in which she set out the facts hereinbefore stated, but in greater detail, and alleged therein that she had under her husband's will, not only the power to sell and make a good title to all of the stock, but that she is entitled under the will to the entire corpus of the property, and that the contingent remaindermen, mentioned in the second clause of the will, not only have no present interest in the property, but that they have no interest in any of it except what may remain, if any, at the time of the happening of the contingency of her marrying again.

As the cause progressed, by an appropriate order, the contingent remaindermen were ordered to be made parties, and they finally appeared in the cause and filed their answer. The answer of New is a traverse of the peti-

tion, including the claim of Mrs. Harris of her power to convey a perfect title to the stock, and the answer of the contingent remaindermen is likewise a traverse, and questions the right of Mrs. Harris to convey or transfer any part of the stock. By agreement of parties, the deposition of Mrs. Harris, *de bene esse,* was taken and filed, and there is in the record an agreed stipulation of facts. With the record in this condition, the cause was submitted, and judgment rendered requiring the contract of November 11, 1913, as amended by that of December 3, 1913, to be specifically performed, thereby requiring the purchaser, New, to accept the $15,000 of stock at the agreed price of $27,000, and pay therefor according to the terms of the contract. It was further determined in the judgment that the widow take an absolute title in one-half of the net amount of the testator's property, and the right to the profits and proceeds from the other one-half, as long as she remained unmarried, but that if she should marry again the corpus of the other half would belong to the contingent remaindermen, or their representatives, in their respective proportions, and, inasmuch as it appears in the stipulation of facts that Mrs. Harris was expecting to take up her residence in the State of California, it was adjudged that she should not remove the one-half of the corpus of the property adjudged to the remaindermen, upon the happening of the contingency, and she was therefore required to execute a bond as trustee for same, properly conditioned, and she declined to do this, whereupon the court appointed the Louisville Trust Company as trustee for that one-half of the property, and it immediately executed bond and qualified. A portion of the judgment is devoted to the adjustment of the accounts of the executrix. From this judgment all parties appeal.

It will at once be seen that the questions for determination are: First, could the executrix, at the time she contracted to sell this stock to New, convey to him a good title? and second, what are her rights in the proceeds? It will be observed that there is a difference between the right to sell, transfer and convey this property so as to give the purchaser a good title, and the right to proceeds of the sale after it has been made. Mrs. Harris was something more than a joint owner in this property. She was the absolute owner of one-half of it, which, of course, gave her the right to absolute control and to

exercise full dominion over her one-half; and she was also entitled to the possession, control, and profits from the other half, and held it in this manner, subject only to be defeated by the contingency mentioned in the will. She was also the personal representative.

In the case of McKee v. McKee, 26 Ky., 739, this court had under consideration a question almost identical with the one in the instant case, except that the first taker did not have an absolute and unfettered estate in any portion of the fund, which in that case was five thousand dollars. The right to convey the property was upheld in the following language:

"One bequeathed a defeasible estate is entitled to its possession, nothing to the contrary appearing in the will, and to its use as if he were given the fee simple, except that if he should consume it, or any part of it, and then his estate be defeated by the occurrence of the condition imposed, he would be liable to the person next entitled, or if the property could be traced, the person who had got it, unless he were an innocent purchaser for value, in the case of personalty, would be compelled to surrender."

The authorities relied upon by counsel for the contingent remaindermen and New do not militate against these views, because, upon an examination of them, it will be found that in the cases referred to the first-taker of the property was not given by the instrument creating it the title to an absolute interest in any portion of it, and we do not gather from them that there was any question of the right of the first title holder to make a perfect title by sale. In none of them did the first-taker have title to any portion of the property unfettered by any defeasance, which differentiates them very materially according to the views we take, from the instant case. Moreover, in the character of property we are here dealing with, it being that character of property which is subject to be affected by varying business disturbances and the constant fluctuations of the market, the power and the right should be vested in some one to instantly sell and convey the property, if necessary, in order to avoid the depressing effects of such conditions, or the catastrophe of panics and other circumstances which might be imagined, affecting the vendible value of the property. We can not imagine a more appropriate person upon whom the law should confer this right than

in one owning absolutely one-half of the property, and who also held title to the other half, subject to a contingency that might never happen. But for the purpose of this case, we need not discuss the proposition further because the court now has possession of the one-half burdened with the contingency, and has thrown around its preservation all of the safeguards of the law, and there is no evidence in the case that the stock was sold at a sacrifice or less than its market value. Moreover, with the title to this property in the condition it was, the chancellor, upon proper application with all parties interested, or possibly interested, before him, could have ordered the sale of the property for re-investment into safer or more staple securities; and it is within the power of the court to adopt or ratify as its judgment any contract which effects the relief and accomplishes the same results that could have been effected or accomplished by a judgment, upon proper application, without the existence of the contract. This adoption or ratification of the contract, as the judgment of the court, would, of course, be withheld in all cases wherein it would be inequitable under the facts to some of the interested parties to enforce it. As stated, we find no facts in this record which would make the sale of the stock by Mrs. Harris to appellee, New, and its enforcement infringe upon or imperil in the least the interest of any of the parties herein, and the court, under the rules stated, in adopting as its judgment that which had already been done under contract, saved the cost and delay incident to a sale under decree of the court. We, therefore, hold that the chancellor was correct when he ordered the contract of sale to be enforced.

As to the second proposition but little need be said. The cardinal rule of the law in the interpretation of wills is that the intention of the testator shall prevail. We cannot conceive of more simple and easily understood language as to the intention of the testator than is used by him in this instance. The second clause of the will contains nothing that remotely points to an ambiguity, and there is no occasion to marshal to our aid any of the technical rules of interpretation in order to understand the testator's meaning. He plainly gave to his wife this one-half of his estate in question, with the right, of course, to appropriate all of the income therefrom, subject, however, to be defeated should she again marry.

Among the numerous authorities of this court, we will cite only, without quoting, the following: Huerkamp v. Huerkamp, 145 Ky., 194; Dorsey's Committee v. Maddox, 103 Ky., 253; Mudd v. Mullis, 11 K. L. R., 417; Davidson's Admr. v. Davidson's Executor, 149 Ky., 571. It would serve no useful purpose to refer to opinions from foreign jurisdictions, or from text books, although they all, so far as we have been able to find, accord with the doctrine as laid down in this Commonwealth. There is a class of authorities which hold that the absolute title is taken under the will, notwithstanding defeasance clause, if the property is such that it will be consumed in its use, but it is sufficient to say that the property herein involved is not of that character. Serious complaint is made by counsel for Mrs. Harris because it went further than to adjudge the enforcement of the contract of the sale of stock, and proceeded to adjudge the rights of the parties in and to the proceeds. It is a maxim in equity, which is, in substance, that a court of equity, when it has jurisdiction of the subject matter and of the parties, will do complete justice between them; and it is furthermore a maxim that "Equity abhors both circuity and multiplicity of actions, and will adjust conflicting equities of persons in one suit." Sanders & Walker v. Herndon, 128 Ky., 437. The court in this case had jurisdiction of the subject matter, as well as of the parties, and it not only had the right to, but it was its duty under the rules referred to, *supra*, to adjust the rights of all the parties in and to the fund, thus avoiding probable future litigation and setting at rest the rights of all parties arising from any contingency in and to the trust fund. In order to have done this, it was necessary that the contingent remaindermen should be made parties to the suit, and the court did not err in doing so. We, therefore, conclude that the chancellor was within the limits of his power when he appointed a trustee with defined powers to take charge of one-half of the net amount of the testator's estate.

In the settlement which the chancellor made of the accounts of the executrix we have come to the conclusion that he charged her with $1,765.61 too much. This seems to have occurred by accepting the figures stated in the amended answer of the remaindermen, filed on November 14, 1914, in which it is claimed that there is due the estate from the executrix, as such, the sum of $5,000, in

addition to the value of the stock sold to New. The proof shows that Mrs. Harris collected the insurance, amounting to $8,000, and she sold five shares of the stock to Summers before its value had increased by the payment to the Ox Breeches Manufacturing Company of $45,000, the amount of the life insurance of Abraham Levy, made payable to the corporation, and it is sought by said amendment to charge her with more than the par value of the five shares thus sold. It is denied in the reply to the amendment that she realized more than the par value for the stock sold to Summers, and we are not disposed to charge her upon the record and proof, any more than $5,000 as the proceeds of such stock. This makes $13,000 which she collected, and she disbursed, according to her settlements, and which are uncontradicted, $9,765.61, which leaves in her hands of the estate, $3,234.39. She is charged in the judgment with $5,000, or $1,765.61 too much, and for this reason only the judgment as to her is reversed, and in all other respects it is affirmed.