## Simmons' Executor, et al. v. Hunt, et al.

(Decided October 10, 1916.)

### Appeal from Jefferson Circuit Court (Chancery Branch Number One).

1. Compromise and Settlement—Consideration.—A controversy as to the title to property, in order to constitute a consideration for a compromise or a family settlement must be a real one, and the question must be one about which well informed lawyers and judges may easily differ and about which the parties themselves do differ.

2. Trusts—Enforceable Trust.—An enforceable trust is not established by an agreement that does not designate a cestui que trust nor indicate any particular charity to be benefited.

3. Wills—Construction.—The testator devised the residuum of his estate to his nieces and nephews without naming them, excepting two of the class, and then provided for the payment of the fund so devised in a manner inapplicable to the class; held that in arriving at the intention of the testator that the designation by him of the particular class as the beneficiaries of the fund must control rather than the manner providing for the payment of the fund to them.

CHARLES CARROLL, M. M. LOGAN, Attorney General, and TOM COCHRANE for appellants.

EDWARDS, OGDEN & PEAK for Louisville Trust Co., as Executor and Trustee.

STRAUS, LEE & KRIEGER, FRANK P. STRAUS and HOWARD B. LEE for appellees, Baptist Mission Boards.

GEO. WEISSINGER SMITH for Sam P. Myer, &c.

BEN CHAPEZE for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

W. H. Simmons died, testate, a resident of Bullitt county, February 14, 1909. After his will was probated his brother, S. M. Simmons, referred to in the will as "Sam," and named therein as executor, qualified and acted as such until his death April 10, 1915.

After disposing of a portion of his estate by specific bequests which are not involved in this action, W. H. Simmons concluded his will in these words: "Everything else I own goes to charity. I leave that to my

brother, Sam, to give out.'' The residuum thus attempted to be disposed of amounted to about $80,000.00.

On March 4, 1909, two of the heirs at law and legatees of W. H. Simmons, together with the executor, S. M. Simmons, entered into a written agreement, which was later ratified by the other heirs and devisees of W. H. Simmons. The preamble and fifth clause of this agreement, which are the only parts of same in any way involved here, are as follows:

"We, the undersigned, heirs at law of Wm. H. Simmons, deceased, and also devisees under his last will and testament, in order to avoid litigation, and to secure a speedy and final settlement of the estate of said decedent, have this day agreed, and do hereby agree on the following settlement and distribution of the said estate, and request you to act in accordance therewith.

"FIFTH: So much of said will as seeks to have the residuary of said estate used by the executor for charitable purposes is so indefinite and uncertain the same cannot be executed in full legally, but the same can and should be carried out to the extent herein designated, and for said purposes and in consideration of our love and affection for the memory of said decedent, and in order to carry out his desire to contribute to certain charitable and benevolent objects, we have this day assigned and transferred and do hereby assign and transfer to Samuel Simmons as trustee, twenty-five (25%) of said residuary fund, whatever the same may be, on the express trust that he will use and expend the same and any accumulations thereof, to aid and assist the said charitable and benevolent objects; and the said trustee is vested with full and complete discretion as to the amount to be given to each of said objects and as to the time and manner of giving same. The remaining seventy-five (75%) of said residuary fund shall be distributed among the heirs at law of said decedent in the same proportion and with the same pro rata as the portion of said estate devised to them in said will was therein given to them by the testator.''

In accordance with the terms of the fifth section of this agreement seventy-five per cent. of the residuary estate of W. H. Simmons had been distributed as therein provided, and the remaining twenty-five per cent., or $20,000.00, was still in possession of S. M. Simmons, undisposed of by him.

April 10, 1915, S. M. Simmons died, testate, a resident of Jefferson county. Appellant, Louisville Trust Company, was named as executor in this will, qualified as such and is now acting in that capacity. The eleventh and twelfth items of S. M. Simmons' will, constructions of which are to be made herein, are as follows:

"ITEM ELEVENTH: Heretofore there was transferred to me by the heirs at law of my deceased brother, W. H. Simmons, a certain portion of his estate, to be disposed of by me for charitable and benevolent purposes, as requested in his will, and there may be at my death a portion of that trust fund unexpended; and if so, the same will appear in a separate memoranda left by me and should there be such remainder, I will and bequeath the same to The Louisville Trust Company, in trust, to use, control and invest the same and pay annually or semi-annually the income therefrom, one-half to the State Missions Board of the General Association of Baptists in Kentucky, which said Board shall use said income paid to it by the said The Louisville Trust Company in aiding and assisting to build and equip churches and school houses in the mountains of Kentucky, and one-fourth ($\frac{1}{4}$) of the income to the Foreign Missions Board of the General Association of Baptists in Kentucky, and one-fourth ($\frac{1}{4}$) of the income to the Home Missions Boards of the General Association of Baptists in Kentucky, to be used by said Boards in advancing the cause of Christ in both foreign and home fields.

"ITEM TWELFTH: The rest and residue of my estate, and any part reverting to my estate, as set forth in the above will, I will and bequeath to my nephews and nieces (excepting George P. Bohannon and Willett S. Bohannan, who, as heretofore stated, were amply provided for by their uncle, W. H. Simmons), to be divided among them equally, this amount to be paid to them as they respectively attain the age of twenty-one years, to be held in trust by The Louisville Trust Company the same as the other trusts and to be paid to them as they respectively attain the age of twenty-one years."

This action was filed by the Louisville Trust Company as executor and trustee under the will of S. M. Simmons against his heirs and devisees, seeking a construction of his will and a settlement of his estate. Neither W. H. Simmons nor S. M. Simmons was ever

married and at the filing of this action their heirs were G. W. Simmons, a brother, Mary Jane Myer, a sister, and the three children of a deceased sister.

After the death of S. M. Simmons, his brother, G. W. Simmons, was appointed and qualified as administrator with the will annexed of W. H. Simmons, and as such filed a petition herein to be made a party and that his petition be taken as his answer, counter-claim and cross-petition, alleging that the residuary clause in the will of W. H. Simmons quoted above and the fifth clause of the contract of March 4, 1909, were void for uncertainty, and asking that that portion of said residuary fund in the possession of S. M. Simmons at his death be adjudged to him.

G. W. Simmons and the three children of his deceased sister filed answer, counter-claim and cross-petition, asserting that this charity fund in the possession of S. M. Simmons at his death belonged to them as the heirs of W. H. Simmons, and praying that it be adjudged to them. An answer was also filed by the four devisees under the fourth clause of S. M. Simmons' will, claiming that they were intended by the testator as the beneficiaries under item twelve of his will, and as such were entitled to the residue of his estate.

Demurrers were sustained to the petition, answer, counter-claim and cross-petition of G. W. Simmons and others, and to the answer of the four devisees who claimed the residuum of the estate. These parties declining to plead further, and the case being submitted, the court adjudged the portion of the fund that W. H. Simmons attempted to set apart to charity, and which was in the possession of S. M. Simmons at his death, to pass under the eleventh item of S. M. Simmons' will to the Louisville Trust Company, as trustee for the three mission boards of the Baptist church named in said clause; and that the testator, S. M. Simmons, by the twelfth clause of his will, intended to make his grandnieces and grandnephews the residuary legatees instead of his nieces and nephews as therein stated, and adjudged the residue of the estate to his grandnieces and grandnephews.

Upon this appeal a reversal of the judgment with reference to both clauses of said will is sought, and as the two parts are separate and distinct, we shall treat them separately.

1. The fund devised by S. M. Simmons under the eleventh clause of his will came into his possession and was held by him under the contract of March 4, 1909, above quoted, which was made (as it states) in settlement of a controversy among the heirs of W. H. Simmons over the meaning and effect of the residuary clause of his will. That the residuary clause in the will of W. H. Simmons is void for uncertainty under section 317 of the Kentucky Statutes is so manifest that no contention is or could reasonably be made otherwise. Spalding, etc., v. St. Joseph Industrial School, 107 Ky. 382; Gerick v. Gerick, etc., 158 Ky. 478. The written agreement of March 4, 1909, between the heirs and executor of W. H. Simmons is no more definite respecting the purposes or beneficiaries of the charity therein sought to be provided for, than is the residuary clause of the will of W. H. Simmons. It therefore results that this agreement if a gift to charity, having the same legal infirmities as the residuary clause in the will of W. H. Simmons, is void for the same reasons and under the same statute that the residuary clause is void. It is contended, however, by counsel for the Baptist Mission Boards that the agreement of March 4, 1909, was not a gift of the charitable fund, but that this fund was set aside to S. M. Simmons in trust for charitable purposes as a compromise of differences arising among the heirs and devisees concerning the settlement of the estate of W. H. Simmons. This view cannot be sustained, however, because there was no such controversy concerning the settlement of the estate of W. H. Simmons sufficient to constitute a legal consideration to support a valid contract. As was said in Bunnell v. Bunnell, 111 Ky. 566, such a controversy "must be one about which well informed lawyers and judges may easily differ, and about which parties themselves differ." No well informed lawyer and no judge could have any doubt as to the validity of the residuary clause of W. H. Simmons' will, and the agreement itself shows that the parties themselves did not differ with reference thereto, all admitting that it was invalid. Creutz v. Heil, 89 Ky. 433; Cline v. Templeton, 78 Ky. 550; 8 Cyc. 508; 1 Parsons on Contracts 440; 1 Chitty on Contracts 35. And even if not invalid as a gift, the agreement still must fail because it is too indefinite and uncertain to be car-

ried out. No *cestui que* trust is designated and no court could enforce this agreement as a trust.

Section 95 of Perry on Trusts is as follows:

"The authorities establish this proposition that where there is a valuable consideration the court will enforce the trust, though it is not perfectly created, and though the instruments do not pass the title to the property, if from the documents the court can clearly perceive the terms and conditions of the trust and the parties to be benefited. In such cases effect is given to the consideration to carry out the intentions of the parties, though informally expressed. But if no *cestui que* trust is named, or so designated that he can be identified, the court cannot carry a trust into effect, however clearly it may be created in other respects." This rule was approved in Tanner, etc., v. Skinner, 11 Bush 127.

If because of its uncertainty no court could enforce this trust, if it was a trust of any kind, it would seem clear that S. M. Simmons could not have larger power than the court, and the further ability to delegate to another a valid authority to execute the trust. And if the agreement of March 4, 1909, was a gift, as we hold it to be, it was, under section 317 of the statutes, void and could not support a valid executory trust that could be ripened into a valid executed trust by any action of S. M. Simmons, as seems to have been the theory of the chancellor upon which he declared a valid trust in favor of the three Baptist mission boards under the eleventh clause of the will of S. M. Simmons upon the ground that it was then an executed trust, while before the probation of the will of S. M. Simmons it was but an executory trust and could have been defeated by the heirs of W. H. Simmons.

The conclusion of the chancellor is in direct conflict with the opinion in the case of Spalding, etc., v. St. Joseph Industrial School, *supra,* and rendered nugatory the provisions of section 317 of our statutes. Clearly S. M. Simmons was without power or authority to make a valid bequest of this fund, twice ineffectually dedicated to an indefinite and uncertain charity by void instrument of writing. The residuary clause in W. H. Simmons' will being void, the title to the residue of his estate passed to his legal heirs, and the agreement of March 9, 1909, being void, the title could not thereby pass from them, S. M. Simmons did not and could not

take legal title to this property under either of these void instruments. He had no title thereto except in the interest inherited by him as an heir of his brother, W. H. Simmons. This undivided interest in the charity fund he could and did devise to the Baptist Mission Boards. To the rest of this fund he had no title, legal or otherwise. He simply had possession and was without authority to give it away. It is probably true that the parties to the agreement are estopped from asserting a claim against his estate for any portion of this fund he may have distributed in good faith under the agreement, but no question of estoppel can defeat their claim to the property itself in the hands of the court for distribution to its rightful owners.

2. In construing section 12 of the will of S. M. Simmons, the lower court held that by the words "the rest and residue of my estate. . . . I will and bequeath to my nephews and nieces" (with the exceptions of the two named nephews) the testator meant and intended his grandnieces and grandnephews and not his nieces and nephews as stated. The court reached this conclusion because of the fact that all of the nieces and nephews of the testator were more than thirty years of age at the time the will was executed, and because of the provision in the latter part of said clause that the amount so devised was "to be paid to them as they respectively attain the age of twenty-one years, to be held by the Louisville Trust Company the same as other trusts and to be paid to them as they respectively attain the age of twenty-one years;" the lower court holding that this provision, which was not applicable, of course, to any of the nieces and nephews, satisfactorily showed that the testator did not mean his nieces and nephews. This position of the lower court finds support in the fact that in other parts of the will the testator referred to certain of his grandnephews and grandnieces as nieces and nephews. We are unable, however, to agree with this construction, since the testator describes the class to whom this fund is to go as his nieces and nephews, and excepts therefrom two of his nieces and nephews. That he excepted from the stated class, by name, two who were in fact of that class, shows conclusively to our minds that testator did not have in mind, nor intend as his residuary legatees, his grandnieces and grandnephews, but that he did intend as he stated,

his real nephews and nieces with the exception of the two excluded. Since these nephews and nieces were more than thirty years of age, the provision as to payments to them as they respectively attained the age of twenty-one years is, of course, contradictory and meaningless. We cannot reconcile this last clause, but we feel sure it ought not, because inapplicable itself, to be permitted to destroy the clearly expressed and entirely reasonable provision in the first part of the clause. It is much easier to suppose that the testator inadvertently attached this provision to the clause to which it was not applicable than to assume it is the controlling part of the clause. This first part of the clause fixes the objects of his bounty. The second part provides a manner of payment to them which was of secondary importance. The first rather than the last part of this clause must be given controlling effect in an effort to ascertain to whom this property is to go.

At least two other theories are advanced in briefs construing this clause to have been made for the benefit of other groups of devisees named in the will, which need not, however, be explained since our conclusion that the testator meant his nieces and nephews except the two excluded as stated, disposes of these other contentions.

Wherefore the judgment is reversed with directions to overrule the demurrer to answer, etc., of G. W. Simmons, et al., and for proceedings not inconsistent herewith.