## Keisker v. Bush.

(Decided October 23, 1925.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Injunction—Power of Courts of One State, to Enjoin Prosecution of Action Between Its Citizens in Another State, Though Existent, will be Exercised with Great Caution.—Power of courts of particular state in action between its own citizens to enter judgment in personam, passing on merits of controversy then pending between them in another state, and enjoining one of parties from proceeding therein, though existent, will be exercised with great caution, and only in cases showing that procedure in foreign state was instituted for purpose of securing to plaintiff an unfair advantage, or of subjecting defendant to great and unnecessary inconvenience and expense.

2. Injunction—Injunction, Against Prosecution of Claim Against Estate in Courts of Another State, Held Unwarranted.—Injunction against defendant's prosecution of claim against estate in courts of another state, where will of decedent had been probated and estate was in process of settlement, held unwarranted.

3. Appeal and Error—Judgment Dismissing Injunction Suit Modified on Appeal to Show Dismissal Without Prejudice.—Judgment dismissing suit, whereby it was sought to enjoin defendant from prosecuting claim against estate in courts of another state, such that it might be improperly construed as judgment on merits, will be modified on appeal, so as to show a dismissal without prejudice.

EDWARD J. McDERMOTT for appellant.

JOHN B. BASKIN for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

In about 1890 appellee was a young lawyer in the
city of Louisville. He was educated and accomplished,
and had literary ambitions. In the practice of his pro-
fession he became acquainted with Mr. A. A. Van Buren,
a prominent business man of Louisville, of considerable
estate and large income. Appellee became a favorite in
the family of Mr. Van Buren, and during the next few
years spent much of his time at his home. He frequently
went there by invitation for week-ends, and upon other
occasions.

Mrs. Van Buren had two sisters, Mary Louise
Keisker and Laura B. Keisker, one of whom (Mary Lou-
ise) lived constantly at the Van Buren home, and the
other (appellant) spent a large portion of her time there.

There was no relationship either of blood or mar-
riage between appellee and either of the Van Burens or
the Keisker sisters, but a warm and enduring friendship
sprung up between him and each of them.

After a few years the intimacy between the Van
Buren family and appellee became such that he went to
the Van Buren home to make his own home, and con-
tinued to do so during all the transactions involved in
this litigation. His living there began some years before
the death of Mr. Van Buren in 1910, and since that time
he seems to have had practically entire charge of the
management of the affairs of each of the three women;
and so far as this record discloses he has been for a
long period practically the head of the house, all three
of the women looking up to him and having confidence in
his ability and integrity.

Mrs. Van Buren had a home in or near Louisville, a
winter home in Florida, and a summer home at Brook-
line, Mass. When she and her sisters, or either of them,
went to Florida appellee likewise went as a member of
the family, and when they went to Massachusetts he
generally went.

In January, 1917, Mrs. Van Buren executed her will,
written by appellee, wherein she devised to him without
restriction the property owned by her in Brookline,
Mass., and unconditionally devised the remainder of her
estate of all kinds to her two sisters. In that will Bush
was named as executor, and as such he probated the will

after the death of Mrs. Van Buren in 1922 in the county of her residence in Florida, and qualified as executor.

After the making of her will in 1917, and before her death in 1922, the house on the property at Brookline, Mass., was destroyed by fire, and Mrs. Van Buren thereafter collected the insurance thereon and sold and conveyed the property upon which the house had been situated, and appropriated the proceeds of each to her own purposes. That was in 1918.

Between that time and her death she neither modified nor changed her will, but did request her two sisters, who are residuary devisees under her will, to see that Bush was given property or money out of her estate equivalent to the value of the Brookline property, and the evidence tends to show they promised to so do. Accordingly some weeks after her death, as the result of a conference between the three, there was prepared by appellee on May 13, 1922, a paper reciting these facts and signed by all three of the parties and duly witnessed.

That paper is as follows:

"Orange Park, Florida, May 13, 1922.

"Whereas, Alicia K. Van Buren died on the 11th day of April, 1922, and left a will in which she devised and bequeathed to the undersigned Finlay Ferguson Bush a house and lot in Brookline, Massachusetts, and the remainder of her estate to the undersigned Mary L. and Laura B. Keisker;

"And, whereas, after the making of said will, the said house and lot was sold and ceased to be a part of the estate of the said Alicia;

"And, whereas, it was the wish and intention of said Alicia that said Finlay Ferguson Bush should, in place of said house and lot, have and receive from her estate other property equivalent to said house and lot;

And, whereas, said wish and intention was made known and expressed to all the parties hereto, and the said Mary L. and Laura B. Keisker promised and agreed with said Alicia to carry out and execute said wish and intention, in case another will should not be made;

"Now, therefore, for the purpose of carrying out said wish and intention and their said promise to and agreement with the said Alicia, the said Mary

L. and Laura B. Keisker hereby contract and agree with said Finlay Ferguson Bush that he is entitled to and shall receive, from the estate of said Alicia, property, either real or personal, which shall be equivalent to said house and lot;

"And said Mary L. and Laura B. Keisker state that they make this contract and agreement without solicitation and solely for the reasons herein set forth and for the considerations above described."

Mrs. Van Buren died a resident of Clay county, Florida, and at the time this action was brought in Jefferson county, Kentucky, her estate was in process of settlement in the county court of Clay county, Florida, where her will had been probated.

Some time after the signing by appellant of this paper she became dissatisfied, and in 1923 brought this equitable action in the circuit court of Jefferson county, Kentucky, where she and appelllee each then resided, alleging, in substance, that the execution of the paper was procured by appellee from her and her sister by the exercise of undue influence, and at a time when they were overwhelmed with grief at the recent death of their sister, and when they, nor either of them, knew of the status of affairs of Mrs. Van Buren's estate, while appellee was fully cognizant of the same. She likewise alleges that neither she nor her sister was familiar with or had any very great knowledge of the conducting of business, while appellee was a trained and accomplished lawyer and thoroughly familiar with all business methods; that at the time he had unbounded influence over each of them, and because of such influence, and of his superior knowledge of business matters and methods, he had overreached and imposed upon each of them in the execution of that paper. She also alleges that he misrepresented certain things with reference to the estate and the value of its assets, and the amount of its indebtedness, and has declared his intention of paying himself out of the estate under the agreement above quoted in the settlement of the Van Buren estate in the Florida courts.

The prayer is for a mandatory injunction requiring defendant to consent to the entry of certain orders in the county court of Clay county, Florida, whereby plaintiff should have a reasonable time to file exceptions to defendant's report of settlement as executor, and concern-

ing his receipts and disbursements; and that the paper of May 13, 1922, be cancelled and held for naught, and that defendant be perpetually enjoined from asserting any right or claim under such paper to any money or property belonging to the Van Buren estate.

The essential averments of the petition were put in issue, and on a hearing the chancellor dismissed the plaintiff's petition.

Mary Louise Keisker, a party to the paper sought by the plaintiff to be cancelled, was not a party to the action, and the court in its opinion properly declined to consider the case in so far as it affected her rights.

The only question necessary to consider is whether the plaintiff has presented such a state of case in her pleading as will justify the courts of this state in passing upon the merits of the controversy, and in granting injunctive relief to one of its citizens against another, to prevent the latter from asserting a claim or maintaining an action on that claim in the courts of another state, where it appears from the pleading that the whole matter is in process of settlement in the courts of a sister state.

The power of the courts of one state, in a proper case, in an action by one of its citizens against another to enter a judgment *in personam* passing upon the merits of a controversy between them, although there may be at the time pending in another state an action involving the same subject matter, and to enjoin one of the parties from proceeding with or prosecuting such action in the foreign jurisdiction, seems to be well recognized; but it is a power that will be exercised with great caution, and only in such cases as plainly show that the procedure in the foreign state was instituted for the purpose of securing to the plaintiff therein some unfair or unconscionable advantage under the laws of that state, or growing out of the facts of the controversy, or that the prosecution of such suit in the foreign state would subject the defendant therein to such great and unnecessary inconvenience and expense as to make it apparent the foreign forum was selected with the design to vexatiously harass the defendant therein.

In the case of Reed's Admrx. v. I. C. R. R. Co., 182 Ky. 455, a question somewhat similar to the one here involved, but presenting an essentially different state of facts, was under consideration, and while the court in that opinion recognized and upheld the power of the

courts in this state as between two of its citizens to grant one of them relief against the other under such circumstances, and in fact did in that case grant the relief sought, after discussing the power of the court, in considering the question when such power should be exercised, said:

"Aside from the question of comity between the states, and the reluctance that the courts of one state naturally have to interfere with the prosecution of actions in the courts of another state, it is a serious and delicate matter for a court to thus restrain a citizen from the exercise of a privilege given to him by the law merely upon the ground that in exercising it he may subject his adversary to greater expense and inconvenience than he would suffer if the suit had been brought in another place.

"Accordingly this extraordinary relief will only be granted when the facts plainly show that the institution of the suit in the foreign state was for the purpose of securing to the plaintiff some unfair or unconscionable advantage arising either under the law or fact, or that the prosecution of the suit in the foreign state would subject the defendant to such great and unnecessary inconvenience and expense as to make it appear that the foreign forum was selected for the purpose of vexatiously harassing the defendant."

Under the authority of that opinion, and in the light of the many and convincing authorities cited and discussed therein, we are of opinion that the plaintiff in this case has presented no such state of case as would justify the courts of this state in determining the controversy already pending in the courts in Florida, and which necessarily arose in the courts of that state in the settlement of Mrs. Van Buren's estate. She died a resident of that state, and her will was properly probated in that state, and of necessity must be settled in the courts of that state.

Under the contract between the parties here involved, made subsequent to her death, an assertion of claim by the appellee under its terms would naturally, if not almost necessarily, be presented in the settlement of her estate; for by its terms that agreement provides for the payment out of the Van Buren estate devised to the

two Keiskers, either real or personal property, equivalent in value to the Brookline property devised to appellee in the Van Buren will, and which devise had become ineffectual by ademption. There is no allegation here of any advantage that may arise to appellee in the presentation and prosecution of that claim in the courts of Florida, nor is there a direct allegation that the plaintiff in the defense of such claim in the state of Florida would be subjected to such great and unnecessary inconvenience and expense as to make it appear that that forum was selected with the design to vexatiously harass her; but it is only incidentally suggested in the petition that Bush has declared his intention of paying himself the $16,000.00 out of the estate, unless the plaintiff, a resident of Kentucky, undertakes the extra trouble and heavy expense of contesting the claim in the courts of Florida.

At the time this agreement was entered into the will of Mrs. Van Buren had been probated in Florida, and the subject mater of that agreement on its face had to do with the settlement of her estate. It is clear, therefore, that the parties at the time contemplated that not only the estate was to be settled in Florida, but that any adjustment of their agreement which necessarily involved the estate should likewise be settled there.

Not only is there nothing in the petition showing that Bush in the courts of Florida would have any unfair or unconscionable advantage over appellant in the adjustment of this matter, but there is no sufficient allegation that the plaintiff in such settlement in Florida of the controversy would be subjected to such great and unnecessary inconvenience and expense as to show that forum had been selected with that view. As a matter of fact, under the circumstances, there was no selection of a forum by Bush; he merely presented in the courts of Florida a claim against an estate in process of settlement there, affecting the rights of a devisee who lived in Kentucky, and that devisee without any sufficient showing seeks to adjudge the merits of the controversy between them in this action, and to enjoin him from prosecuting his claim in Florida. Not only is there no allegation of the great and unnecessary inconvenience and expense involved in contesting that claim in Florida, but the petition on its face shows that appellant's sister, Mary Louise Keisker, has presented, as alleged in collusion with appellee, a large claim against the Van Buren estate, which

appellant in substance alleges is unjust and which she desires to contest. This fact is referred to to show that there would probably be little additional expense and inconvenience in also contesting in the courts there the claim of appellee.

It is our conclusion, therefore, that the plaintiff has presented no such state of case as will justify the courts of this state in entering a judgment upon the merits of the controversy between her and appellee, or as justifies the granting of injunctive relief.

But the chancellor below entered a judgment which apparently dismisses absolutely appellant's claim, and which may be construed to be a judgment on the merits which it might be claimed precludes appellant from further resisting this claim in the courts of Florida. However, we interpret the judgment below, when considered with the chancellor's opinion, as being only a dismissal without prejudice of the plaintiff's action. If the judgment may be otherwise construed, the same is now modified so as to be a dismissal without prejudice.

Judgment affirmed.