# Owens v. Owens' Executor.

(Decided November 18, 1930.)

SHACKELFORD MILLER, JR., and NEVILLE MILLER for appellant.

H. M. PECKINPAUGH and FRED FORCHT for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Eugene M. Owens has appealed from a declaratory judgment defining the rights of certain devisees under the will of Mary Jeanette Owens.

The will devised the real estate to a sister and two brothers for life, and disposed of the estates in remainder as follows:

The parcel left to Eugene M. Owens was devised "at his death, or its reinvestment, if it has been sold," to his children, if any. If he is survived by no child or children, it then goes to the "Education Fund" and the "Federal Monument Fund" created by the will.

The parcel left to George W. Owens was devised "at his death, or the reinvestment, if it has been sold, to his two daughters, Alma Bruce Kavanaugh and Anna Louise Owens Waggoner," in equal parts.

The other lot left to Atta Owens Tinsley, was to go "at her death, or its reinvestment, if it has been sold, to her daughter, Elizabeth Tinsley Campbell."

The personal estate was disposed of by this provision:

"Any stocks, bonds, mortgages, or other investments I may own at the time of my death, are to be divided equally between my brothers: George W. Owens and Eugene M. Owens, and my sister, Atta Owens Tinsley, during the terms of their natural lives, and at their death, they, or their reinvestments, are to be divided as was directed in the division of the real estate above mentioned. That of George W. Owens is to become the property of Alma Bruce Owens Kavanaugh and Anna Louise Owens Waggoner: That of Atta Owens Tinsley is to become the property of Elizabeth Tinsley Campbell; that of Eugene M. Owens to revert to the Educa-

tional Funds and Federal Monument Funds, to be mentioned later in the will.''

The provisions of the will respecting the two trust funds were as follows:

''I will now go into the details of the Funds to which I referred: The Real Estate and Invested Money I left to Eugene M. Owens, the cashed Accident and Life Insurance Policy, and any money not accounted for—shall go to two separate Funds: an Educational Fund, and to a Federal monument Fund.

''I will that both Funds be placed in the Liberty Insurance Bank where by proper investments they may accrue interest. The Educational Fund is to educate many useful and patriotic citizens who will be an honor to the United States of America; I trust the Educational Fund will grow larger and larger; and last indefinitely—forever. The Educational Fund is to work as soon as possible. Education is worth paying for, if it is worth anything. Those who apply for Educational Funds must be worthy, and must promise to repay what they borrow—unless some unavoidable calamity prevents. This fund is for worthy American boys and girls, and men and women, white, black, or red (Caucasian, African or Indian.) The Educational Fund is to be placed in the Liberty Insurance Bank which will control it forever, or indefinitely.

''The Federal Monument Fund will be placed in the Liberty Insurance Bank where it will accrue interest until the Fund is large enough to erect a Federal Monument in some prominent place in Louisville, Kentucky, such a monument as her citizens will be proud of, and that it will incite such principles in her young that they will become true, patriotic and noble citizens.

''The Monument is to have four busts, or four statues: George Washington, Abraham Lincoln, Thomas Jefferson, and Andrew Jackson—And a Statue of a Federal soldier. I want on it, 'United We Stand, Divided We Fall,' I want a flag—The Stars and Stripes—the American flag to fly near it. I want no expense spared. The Fund is to grow until sufficient to erect an admirable monument. I wish a

sufficient Fund reserved to pay for the Flag to fly daily and forever.''

The other provisions of the will are not the subject of controversy, and need not be noticed.

The circuit court held that the life tenants possessed the power of sale for reinvestment of the property devised, without the aid of a court of equity; that the two trusts created by the will were valid; that the life tenants were entitled to possession of the devised property; that Eugene M. Owens was required to give bond for the forthcoming of the personal property at the termination of his life estate; and that George W. Owens and Atta Owens Tinsley were relieved of the obligation to give bond by the consent of the owners of the remainder estates, all of whom were sui juris.

1. It is conceded that the will confers upon the life tenants no express power of sale; but it is argued that such power is implied from the provisions in each instance respecting reinvestments. The chancellor cited Goldberg v. Home Missions, 197 Ky. 724, 248 S. W. 219, as authority for his opinion and counsel for appellant have invoked some additional cases. Spicer v. Spicer, 177 Ky. 400, 197 S. W. 959; Kratz v. Slaughter, 185 Ky. 256, 214 S. W. 878; Vickers v. Vickers, 189 Ky. 323, 225 S. W. 44.

It is not denied that a power of sale may be implied when the provisions of the will render it reasonable to do so. For instance, when the will directs a division of the proceeds of property devised, it will be presumed that the executor of the will was authorized to execute it by making the sale and division. 11 R. C. L., p. 398, par. 480; cf. Dunevant v. Radford, 140 Ky. 433, 131 S. W. 185, 140 Am. St. Rep. 392.

In Goldberg v. Home Missions, 197 Ky. 724, 248 S. W. 219, 220, it was said: ''The rule is that a power of sale need not be conferred on a trustee in direct or express terms, but may be implied from the purposes of the trust or from words showing an intention to create the power.''

Kratz v. Slaughter's Ex'rs, 185 Ky. 256, 214 S. W. 878, was cited to support the statement. But neither of the cases cited constitute any authority for the implication of a power of sale in favor of a life tenant, who is not otherwise obligated to perform some duty, or to exe-

cute some trust respecting the estate in remainder. The general rule is that a life tenant has no implied power of sale, since it not necessary to the enjoyment of the life estate, or to effectuate any intention of the testator. 21 C. J. p. 960, sec. 96.

In Vickers v. Vickers, 189 Ky. 323, 225 S. W. 44, it was held that the power given a trustee to sell the trust property may be implied from the conditions of the trust, or from the virtual necessity of a sale to effectuate the purpose of the testator. The case has no relation to the implied powers of a life tenant as such. It is true that a power of sale may be given to a mere life tenant, who may be authorized to convey a fee (Campbell v. Fowler, 226 Ky. 548, 11 S. W. (2d) 423; Dorsey v. Bryan, 170 Ky. 275, 185 S. W. 845 Roby v. Herr, 194 Ky. 622, 240 S. W. 49; Bourbon A. B. & T. Co. v. Miller, 205 Ky. 297, 265 S. W. 790), but the will in this instance conferred no such power on the life tenants, either expressly or by necessary implication.

The references in the will to reinvestments of the property, if sold, were addressed to a potential condition, and not to a necessary consequence of something directed by the will to be done. There is vested in courts of equity a statutory power of sale for reinvestment. Civil Code of Practice, secs. 491, 491a. The testatrix may have contemplated a reinvestment under the law, or other unforeseen conditions, and employed the words quoted to indicate her continuing purpose to control the disposition of her property, whether the identical things were preserved, or converted into some other form of investment. In respect to the personal property, it was not unreasonable to expect a change in form in the usual course of events. Mortgages and bonds might mature and be paid, stocks might be liquidated, and the other personal property was subject to similar mutations. In the cases where the power of sale was implied, it was not deduced in favor of life tenants, but in behalf of executors or trustees. The very basis of the implication is that it is essential to enable the trustee to execute the trust, or to perform some duty respecting the trust estate. Cf. Vansant v. Spillman, Trustee, 193 Ky. 788, 237 S. W. 379.

We are unable to sustain the argument that the will in question conferred upon the life tenants by implication, or otherwise, any power to sell the estates in remainder, without resort to a court of equity.

2. It is insisted that the life tenants were entitled to possession of the personal property without being required to furnish a refunding bond. On the other hand, it is contended that the life tenants were not entitled to possession of the personalty, but, if so, it was proper to exact the bond. The will employed this language with reference to the various devises and bequests: "I will and bequeath this house, etc.,—during the term of his natural life." And, further, "any stocks, bonds, mortgages, or other investments I may own at the time of my death, are to be divided equally between my brothers, George W. Owens and Eugene M. Owens, and my sister, Atta Owens Tinsley."

It is conceded that these expressions standing alone, would entitle the life tenants to the possession of the personal property, as well as the real estate, for the duration of their respective lives. But there is another provision in the will which is thought to affect the matter: "I will that my income: the rents from my real estate, the dividends from my stocks and bonds, the interest of other invested money, from whatsoever source my income is derived my total income is to be used to pay my personal notes and bills—before my estate is divided, as I direct it should be divided in this will." It is said that the provision last quoted is the dominant one and gives character to all the other provisions, which were designed to dispose only of the income. It is quite clear, however, that the testatrix desired her debts to be paid, and thereafter the income should belong to the life tenants, and the estate should be divided among the beneficiaries. The provision is in the nature of a temporary appropriation of the rents and income for the purpose of discharging debts. It was not designed to affect the character of the life estates granted. The very sentence quoted ended with a repetition of the direction to divide the estate according to the will. The dominant feature of the will, apparent throughout, is that the personal property was to belong to the life tenants and the remaindermen. We concur in the conclusion of the chancellor that the life tenants were entitled to the custody of the personal property and to the possession of the real estate, during their lives. It was right, also, to require the appellant to execute a forthcoming bond for the portion of the personal estate delivered to him in order to protect and preserve the estate in remainder. McKee v. McKee, 82 S. W. 451, 26 Ky. Law Rep. 736; Wilkinson v. Rosser's Ex'r, 104

S. W. 1019, 31 Ky. Law Rep. 1262; Hill v. Harding, 92 Ky. 76, 17 S. W. 199, 437, 13 Ky. Law Rep. 380; Harris v. New et al., 167 Ky. 262, 180 S. W. 375; Thomas' Adm'r v. Thomas, 220 Ky. 101, 294 S. W. 776.

But since such bond is solely for the preservation of the remainder estate and the absolute title could be transferred by the united action of the life tenants and the remaindermen, it is within the power of the ultimate owners to waive the bond designed for their security.

3. It is insisted that the provisions of the will creating the educational fund and Federal monument fund are invalid. The basis of the argument is that the intended trusts are too indefinite as to benefits and beneficiaries to be enforced. It is also insisted the Federal monument fund is not embraced within the statute authorizing such trusts for humane purposes, and that it is incapable of practical execution. In so far as the educational fund is concerned, it is obvious that the income is to be used for the education of worthy American boys and girls, men and women of the three specified races. The money is to be lent and repaid, unless unavoidably prevented, and it is clear that it is within the statute as an educational benevolence. The purpose is plain, and the persons to be served are not difficult to identify from the description given. It is true that some discretion is invested in the trustee, but that does not invalidate a trust. It is only when the object and purpose of the trusts, or the beneficiaries thereof, cannot, with reasonable certainty, be ascertained that they are held invalid. The question has been the subject of much discussion. The statute provides that such gifts shall be valid when the instrument by which they are created points out with reasonable certainty the purposes of the charity and the beneficiaries thereof. Section 317, Ky. Stats.

In Spalding v. St. Joseph's Industrial School, 107 Ky. 382, 54 S. W. 200, 21 Ky. Law Rep. 1107, the cases are considered and the rules regarding the validity of bequests for charitable or educational purposes clearly enunciated. Examples of invalidity and the reasons therefor may be found in that and in numerous other cases. Gooding v. Watson's Trustee (Ky.) 31 S. W. (2d) 919, decided June 3, 1930; Coleman v. O'Leary's Ex'r, 114 Ky. 388, 70 S. W. 1068, 24 Ky. Law Rep. 1248; Adams v. Bohon, 176 Ky. 66, 195 S. W. 156; Gerick's Ex'r v.

Gerick, 158 Ky. 478, 165 S. W. 695; Simmons' Ex'r v. Hunt, 171 Ky. 397, 188 S. W. 495.

On the other hand, this court has decided a number of cases upholding the validity of gifts for the good of others. In the opinions in those cases may be found ample discussion of the whole subject. Gill's Ex'r v. Woman's Club, 205 Ky. 731, 266 S. W. 378; Leeds v. Shaw's Adm'r, 82 Ky. 79; Sprowl v. Blankenbaker (Ky.) 127 S. W. 496; Thompson's Ex'r v. Brown, 116 Ky. 102, 75 S. W. 210, 25 Ky. Law Rep. 371, 62 L. R. A. 398, 105 Am. St. Rep. 194; Jenkins v. Berry, 119 Ky. 350, 83 S. W. 594, 26 Ky. Law Rep. 1141; Kasey v. Fidelity Trust Co., 131 Ky. 609, 115 S. W. 739; Green v. Fidelity Trust Co., 134 Ky. 311, 120 S. W. 283, 20 Ann. Cas. 861; Greer v. Synod. Southern Presbyterian Church, 150 Ky. 155, 150 S. W. 16; Miller v. Tatum, 181 Ky. 490, 205 S. W. 557; Kratz v. Slaughter, 185 Ky. 256, 214 S. W. 878; Obrecht v. Pujos, 206 Ky. 751, 268 S. W. 564; Bailey v. Waddy, 195 Ky. 415, 243 S. W. 27; State Bank & Trust Co. v. Patridge, 198 Ky. 403, 248 S. W. 1056; Russell v. Tyler, 224 Ky. 511, 6 S. W. (2d) 707; Leak v. Leak, 78 S. W. 471, 25 Ky. Law Rep. 1703.

It will be found that the test of validity is reasonable certainty in respect of the charity and the beneficiaries thereof, either individually, or as a class.

In so far as the Federal monument fund is concerned, we can see no reasonable ground for distinction between it and those upheld in Ford v. Ford's Ex'r, 91 Ky. 572, 16 S. W. 451, 13 Ky. Law Rep. 183, and Street v. Cave Hill Investment Co., 191 Ky. 422, 230 S. W. 536, where family monuments were involved. Indeed, a public monument for a patriotic purpose, is more broadly beneficial to humanity in general than a private monument with a limited appeal to humane and elevating sentiments. The difficulties that may be encountered in executing the trust may be more imaginary than real, but, if they should be as great as feared, it would not affect the legality of the trust fund. It is not claimed, as indeed it could not be, that the directions given by the will are impossible of execution. Nothing less than that would authorize us to declare the bequest void upon such ground. It is within the purview of the statute and is embraced within the philosophy of the opinions cited.

It follows that we concur with the chancellor in all respects, save the one concerning an implied power of sale in favor of the life tenants, and, since that can be

corrected by a modification of the judgment, it will not be necessary to reverse the decree. Cf. Keisker v. Bush, 210 Ky. 718, 276 S. W. 815. The mandate will direct a modication of the judgment to conform to this opinion, and, as modified, it will be sustained.

The judgment is modified and affirmed.