## Stoeer et al. v. Meyer et al.

Feb. 7, 1941.

James E. Fahey and Woodward, Dawson & Hobson for appellants.

Frank A. Ropke for appellee Meyer.

W. S. Heidenberg for appellee Louisville Trust Co.

Raymond F. Bossmeyer for appellee highest official of Grunbach, Germany.

Louis J. Gorin, Jr., for appellees Community Chest.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming in part and reversing in part.

Mrs. Ida Burghard, of Louisville, Kentucky, died in October, 1939, and later her will, of date August 4, 1922, was probated. The Louisville Trust Company qualified as executor and trustee, and was so acting

when suit was filed in March, 1940, by appellants, heirs at law of testatrix. In her will she provided for payment of funeral expenses and debts; made specific bequests in trust to a sister, remainder to her children, with specific bequests to them, the residue to a sister of her deceased husband, in a double trust. So much of the will as is involved, is a part of Item 4, which we incorporate:

"Upon the death of my husband's sister, Mrs. Martha Moore, the property real, personal and mixed, held in this trust, except sufficient to pay my sister, Frances, her income of Fifty ($50.00) Dollars per month, if she be still living, shall be divided by said Louisville Trust Company as nearly as may be into two equal parts. One half thereof shall be given to a charitable or educational institution in Grunbach or Neuenburg, Nurttenburg, Germany, to be known as the 'William Burghard Memorial.' I am going to Germany for the purpose of selecting said institution and expect to designate it hereafter by a codicil to this will. Should I fail for any reason to do so, then it shall be such charitable or educational institution in Grunbach as may be designated by the highest official of said place.

"The other one-half of said property shall be divided by said Louisville Trust Company in two equal parts as nearly as may be and one half thereof shall be given to the Children's Free Hospital of Louisville, Kentucky, and the other one-half to the Welfare League of Louisville, Kentucky. I would be pleased if said institutions could use such property in such a way that it shall be known as a memorial to my husband and me, but said property is to be theirs absolutely to be used as to them may be deemed wisest.

"Should the Welfare League have ceased to exist the property devised to it shall be divided among the institutions now sharing its funds, if then in existence, and in such proportions as the Board of Directors of said Louisville Trust Company may in its sole discretion deem wise. If all of the said institutions are not then in existence, said Board of Directors may select others of a similar nature to the ones that have ceased to exist, or dis-

tribute the fund between those that remain, according to its best judgment.''

In a suit which named as defendants the executor, trustee, and the ''highest official of Grunbach, Germany,'' for whom warning order was had, the bequests to the unidentified foreign institution, and the Welfare League, were contested. The first on the ground of uncertainty of purpose and beneficiaries; the second because at the time of the death of testatrix and of suit, no such institution existed, hence the bequests were void or lapsed, and there remained undevised property.

There is no challenge of the bequest to the ·Children's Hospital. The appellee, ''Community Chest'' was not originally a party, but agreeably intervened, basing its right to the League bequest on the assertion that it was its rightful successor and entitled to the benefits of, and able to administer the League trust.

The sole questions presented to us for decision arise on the court's ruling on demurrers to pleadings. The executor, and warning order attorney for the Grunbach official, demurred to the petition of the heirs at law, and petitioners below, appellants here, demurred to the intervening petition of the Community Chest. The chancellor on submission sustained demurrer to the petition and upon plaintiff's declination to plead further, dismissed it. He overruled plaintiff's demurrer to the Chest's intervening petition, and plaintiffs declining to answer, adjudged it to be entitled to the bequest. Appellants are those of the heirs at law who were plaintiffs below. Trustee is not cross-appealing.

As exemplified by a memorandum in the record, it was the chancellor's opinion that the bequest to ''such charitable and education institutions in Grunbach, as may be designated by the highest official of said place,'' was valid under authority of Owens v. Owens' Ex'r, 236 Ky. 118, 32 S. W. (2d) 731, and Bush's Ex'r v. Mackoy et al., 267 Ky. 614, 103 S. W. (2d) 95. As to the League's bequest, he held Community Chest to be entitled to take and administer the trust because it was shown to be the former's legitimate successor. From a judgment carrying into effect these expressions, appeal is presented and our consideration will be addressed alone to the two propositions.

At the outset, treating of the Grunbach bequest, it

is admitted by all parties that Mrs. Burghard did not add a codicil, nor did she make the contemplated trip "for the purpose of selecting said institution," either educational or of other charitable nature. The unfulfilled expressed intentions are sufficient to throw a cloud of doubt on the attempted gift, since such when propounded, under our statute (Section 317, Kentucky Statutes) must "point out, with reasonable certainty, the purposes of the charity and the beneficiaries thereof."

A reading of so much of Item 4 undertaking to bequeath to some charitable or educational institution in Grunbach, to be administered by "the highest official of said place," shows at a glance the lack of elements essential to a valid charitable gift. It is not "reasonably certain" as to purposes or class of beneficiaries, or institution, and since testatrix failed to select or designate, or make her intentions plain by visit or codicil, we look to the latter part of Item 4 as being language to be tested, resorting to other portions of that item and the entire will, if necessary to find intention.

It is unnecessary to go into a history of the enactment of our statutes relating to charities, so fully set out in many of our earlier cases, Moore's Heirs v. Moore's Devisees, 4 Dana 354, 29 Am. Dec. 417; Spalding v. St. Joseph's Ind. School for Boys, 107 Ky. 382, 54 S. W. 200, 21 Ky. Law Rep. 1107; Coleman v. O'Leary's Ex'r, 114 Ky. 388, 70 S. W. 1068, 24 Ky. Law Rep. 1248; Gooding v. Watson's Trustee, 235 Ky. 562, 31 S. W. (2d) 919, in which we have consistently held that charitable gifts were valid only when the purposes and beneficiaries thereof were pointed out with reasonable certainty.

A reference to the Spalding case, supra [107 Ky. 382, 54 S. W. 208, 21 Ky. Law Rep. 1107], will serve to illustrate. There the gift was to the Archbishop of Baltimore, "for charitable objects * * * in this diocese of Louisville, according to his discretion," and which we held invalid. In the Coleman case, supra [114 Ky. 388, 70 S. W. 1069, 24 Ky. Law Rep. 1248], the bequest was to the Catholic Bishop of Cork, Ireland, "to be applied to any charitable uses, and so as to do most good, in his judgment." We found the language used to be similar to that used in the Spalding case, and held

the gift invalid, because of uncertainty of purpose or beneficiaries.

It is unnecessary to cite the many opinions of this court holding to the same principle. We may point further to Thompson's Ex'r v. Brown, 70 S. W. 674, 24 Ky. Law. Rep. 1066, 62 L. R. A. 398; Gerick's Ex'r v. Gerick, 158 Ky. 478, 165 S. W. 695, 696; Simmons' Ex'r v. Hunt, 171 Ky. 397, 188 S. W. 495. Nor do we find in Owens v. Owens' Ex'r, or Bush's Ex'r v. Mackoy, supra, anything that militates against the rules announced in the opinions, supra. A reading of each will show a ready distinction. Evidently the testatrix had in her own mind a distinction between a charitable and educational institution, and gave the power of selection to some unknown official.

It is possible that such official, if found, would have been of some religious faith, political or economic belief, widely divergent from those held by testatrix, yet free to apply the gift to purposes foreign to her wishes, either in the character of the charity or learning, or in the selection of beneficiaries. To this extent the trustee, if one could be found or identified, might indeed be exercising his intentions rather than those of testatrix. In brief for appellants there is nothing which would lead us to a knowledge as to who the ''highest official in Grunbach'' is or may be, or whether or not such officer would be ''capable,'' or amenable to courts of this country. No one answering the description was located after diligent effort by the warning order attorney. In the case of Peynado's Devisees v. Peynado's Ex'r, 82 Ky. 5, cited by appellant, there was a showing, as was not in this case, of sufficient safeguards to justify a fulfillment of what we therein found to be a valid charitable gift. This, however, is beside the main question, which is the lack of reasonable certainty as to purposes and beneficiaries, and in holding that Item 4, met the requirements of our statute as construed, the chancellor was in error.

On the other hand, we are of the opinion that the chancellor correctly held that the Chest was and is a ''lineal'' and legitimate successor to the League. Counsel for appellants apparently concede that this bequest is valid as a charitable gift. Nor do they forcefully insist that the Chest is not a lineal successor. The con-

392

tention is that the chancellor should have sustained demurrer to the intervening petition, since the fact concerning "the existence of the League's funds and institutions sharing them, as of the date of Mrs. Burghard's death, should have been alleged in the intervening petition." If this was the only point to be considered, we cannot see (obiter) where the omission would be of great importance to appellants, because of further provisions in Item 4. Appellants' demurrer to the intervening petition of Community Chest admitted the following plead facts: That the Community Chest is an incorporated charitable organization; that it is the successor to the Welfare League. Digressing for the moment, it is manifested by pleadings that when Mrs. Burghard executed her will the League was in existence, but had ceased to operate as such some time in the latter part of 1923, and prior to her death.

There are incorporated into the intervening petition extracts from minutes of meetings of both organizations, which show that after a long discussion indulged in by the then members of both, and a committee appointed by the Mayor looking to the organization of the Chest, it was the concensus of opinion that the continuance of the League, if the Chest be organized, would result in a duplication of efforts looking to the same end; relief to certain classes of worthy persons.

There were meetings between officials of the League and parties interested in the formation of the Chest. After several months of intensive survey, and in December, 1923, the committees concluded to create the Chest. They found that the League had been assisting or financing about 30 agencies "up to this time, but with the organization of the Chest it automatically became unnecessary for the continuance of the Welfare League." The Chest committee then resolved that the League "merge into the Community Chest, and that the agencies now members of the Welfare League will become members of the Community Chest and with all its other members will hereafter look to the Community Chest for funds for their operation."

At a later meeting (Chest Executive Committee) it was suggested that "the best way to take over the League was to accept the present League staff and move into the office, as the staff and headquarters of the Community Chest." This was assented to, and it was later

resolved that the Chest take over the assets and assume all the obligations and liabilities of the League. From a casual reading of the pleadings it is apparent that the Chest took over liabilities rather than assets, which as explained, was because the League had not conducted its usual November campaign for funds, due to the anticipated merger. It was shown that of the 30 agencies under the wing of the Welfare League in 1922, some eighteen or more were in existence at the time of suit, and then members of the Community Chest. Whether those not named had ceased to function, or had been dropped as agencies of the Chest, is not made clear, but this is not of materiality as between appellants and intervenor.

It seems clear to us that above facts admitted by demurrer were amply sufficient to show that the intervenor was in every essential a merger or continuation of the League. There can be little doubt but that Mrs. Burghard was not so much concerned in proposing a gift to the Welfare League, merely the name of an institution, as she was in creating a charity for such agencies as were nurtured by the League. That there may be activities aided by the successor, not helped by its predecessor, as we have suggested, concerns others than appellants and such have so far registered no complaint.

On the question of merger or succession, or continuation of like activities of the predecessor by the successor, while there are certain features existing therein not common here, the recent case of Scott-Lees Collegiate Institute v. Charles et al., 283 Ky. 234, 140 S. W. (2d) 1060, with cited cases, affords light.

We have reached the conclusion that the chancellor was in error in sustaining the demurrer to and dismissing the original petition. To this extent the judgment is reversed; so much of the judgment as overruled plaintiff's demurrer to the intervening petition and entering judgment upon plaintiff's refusal to plead further is affirmed.

Since it is obvious that no costs may be collected from the "highest official of Grunbach," and there was no issue between "such officer" and intervenor, costs in this court should be taxed against appellants and appellee Trust Co. one-half each.

Affirmed in part; reversed in part.